CAMPOLIETI, Appellant and Cross–Appellee,

v.

CITY OF CLEVELAND et al., Appellees and Cross–Appellants.

[Cite as *Campolieti v. Cleveland,* 184 Ohio App.3d 419, 2009-Ohio-5224.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 92238.

Decided Oct. 1, 2009.

420

Caryn Groedel & Associates Co., L.P.A., Chastity L. Christy, Caryn M. Groedel, and Jennifer L. Speck, for appellant and cross-appellee.

Robert J. Triozzi, Cleveland Director of Law, L. Stewart Hastings and Theodora M. Monegan, Chief Assistant Directors of Law, and William M. Menzalora, Assistant Director of Law, for appellees and cross-appellants.

FRANK D. CELEBREZZE JR., Judge.

{¶ 1} Appellant, John Campolieti, a firefighter for the Cleveland Fire Department ("CFD"), appeals the lower court's grant of summary judgment in favor of appellees, the city of Cleveland and Chief of Fire Paul A. Stubbs, disposing of appellant's age-discrimination and promissory-estoppel claims. After a thorough review of the record and for the following reasons, we affirm in part and reverse in part.

{¶ 2} Appellant, age 67, has been a firefighter with CFD for more than 40 years. He was currently serving as a lieutenant in Engine Company Four. On May 19, 2006, when appellant was 64 years old, CFD posted a notice of openings for several positions within CFD, including a lieutenant position in the Fire Investigation Unit ("FIU"). The notice stated that "where all such qualifications are relatively equal, employees shall be selected on the basis of seniority." FIU is staffed with firefighters who must become sworn police officers in order to investigate possible fire-related crimes. Appellant submitted a transfer request from Engine Company Four into FIU along with the other requisite paperwork to be considered for the position.

{¶ 3} The selection process and other terms of employment were governed by the collective-bargaining agreement ("CBA") in force at the time. The criteria for the selection of applicants to fill this position, or any other position that requires specialized training, were based on any specialized skills possessed by the applicant specified in their resume. Where all qualifications were relatively equal, selection was based on seniority. As set forth in Article VI of the CBA, the applicant must also be able to use the specialized training received for the new position for at least five years. For appellant, this position would have been

a lateral transfer under the CBA, and appellant would not have been entitled to any increase in benefits or pay. There may have been an opportunity for more overtime pay and increased prestige in the eyes of some firefighters.

{¶ 4} Appellant had the highest seniority and was at least as equally qualified as the applicant selected. On June 9, 2006, Lieutenant Christopher Posante, then age 42, was granted transfer into FIU rather than appellant. When questioned by appellant as to why his transfer was not granted, Chief Stubbs cited as his reason that he did not feel appellant could satisfy the requirement in Article VI of the CBA of being able to use the specialized training for five years. This was based on a mandatory retirement requirement for police and firefighters who reached age 65, as specified in Cleveland City Codified Ordinance 135.07. Officers and firefighters 65 and older could request an extension of employment. Since Chief Stubbs took office in 2004, no firefighter seeking such an extension has been denied. However, in spring 2006, Councilman Zachary Reed, the chair of Cleveland City Council's Safety Committee, informed Chief Stubbs that no more employment extensions would be granted because "there were younger people out there who needed jobs." An employment extension could be granted only if the chief of fire, the city council, and the public safety director approved.

{¶ 5} On April 16, 2007, foregoing the grievance procedures set forth in the CBA and administrative remedies available by statute, appellant filed a complaint in the common pleas court, alleging that he was denied transfer based on age discrimination, a violation of R.C. 4112.14 and 4112.99; a claim of promissory estoppel relying on the language of the posted notice of available positions; and a wrongful-employment action in violation of public policy. The complaint was later amended to reflect only the first two claims.

{¶ 6} After several procedural motions and issues, the parties filed for summary judgment on July 22, 2008. Appellant's motion for summary judgment was denied on September 15, 2008, and appellees' motion for summary judgment was granted on September 19, 2008, with the trial court finding that the city and Chief Stubbs had demonstrated a legitimate, nondiscriminatory reason for their actions and that appellant had failed to show that appellees' reason was mere pretext.

{¶ 7} Appellant appeals this decision and requests that the case be remanded for trial on the following grounds:

{¶ 8} "1. The trial court erred in granting summary judgment in favor of defendants-appellees as to plaintiff-appellant's age discrimination claim."

{¶ 9} "2. The trial court erred in granting summary judgment in favor of defendants-appellees as to plaintiff-appellant's promissory estoppel claim."

## Law and Analysis

### Age Discrimination

{¶ 10} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 11} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.

{¶ 12} In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary-judgment standard as applied in *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under *Dresher*, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim.*" (Emphasis sic.) Id. at 296, 662 N.E.2d 264. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293, 662 N.E.2d 264. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a genuine issue for trial exists. Id.

{¶ 13} This court reviews the lower court's granting of summary judgment de novo. *Brown v. Scioto Cty. Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140.

{¶ 14} Appellant's claim of age discrimination is rooted in R.C. 4112 et seq., which is the embodiment of Ohio's staunch resolve to remedy instances of discrimination based on "race, color, religion, sex, national origin, handicap, age, or ancestry of any person." R.C. 4112.02(A). Because this statutory scheme is

similar to federal discrimination law, "[f]ederal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.* (1991), 61 Ohio St.3d 607, 609, 575 N.E.2d 1164.

{¶ 15} Under R.C. 4112.02(A), which sets forth unlawful employer discriminatory practices, it is "an unlawful, discriminatory practice for any employer, because of * * * age * * * to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 16} In *Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 128–129, 672 N.E.2d 145, the Ohio Supreme Court stated that a plaintiff-employee may prove a claim of employer discrimination pursuant to R.C. 4112.02 via two separate methods. "Discriminatory intent may be established indirectly by the four[-]part analysis set forth in *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807, adopted from the standards established in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. The *Barker* analysis requires that the plaintiff-employee demonstrate '(1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by or that his discharge permitted the retention of a person not belonging to the protected class.' " Id., paragraph one of the syllabus. The fourth prong of this analysis has been broadened, allowing a plaintiff to show a substantially younger individual rather than an individual not belonging to the protected class. *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, paragraph one of the syllabus.

{¶ 17} The court stated further that discriminatory intent may be established by direct evidence of discrimination, "which is evidence other than the four-part demonstration of *Barker*. *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439. A plaintiff may establish a prima facie case by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent." *Byrnes* at 128–129, 672 N.E.2d 145.

{¶ 18} No matter the type of evidence presented, in order to establish a prima facie case of age discrimination, a plaintiff must show that he was subjected to an adverse-employment action. *Mauzy v. Kelly Servs., Inc.* (1996), 75 Ohio St.3d 578, 664 N.E.2d 1272. "A materially adverse employment action 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a

less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.' " *Watson v. Cleveland* (C.A.6, 2006), 202 Fed.Appx. 844, 854, 2006 WL 2571948, quoting *Kocsis v. Multi–Care Mgt. Inc.* (C.A.6, 1996), 97 F.3d 876, 886, citing *Crady v. Liberty Natl. Bank & Trust Co. of Indiana* (C.A.7, 1993), 993 F.2d 132, 136.

{¶ 19} Appellant wishes to characterize a transfer request as a promotion, even though this change in employment would not have entitled him to greater pay, benefits, or rank. Appellant cites the possibility of an increased opportunity for overtime pay and the position in FIU as being more prestigious. Appellant has introduced no admissible evidence that supports the contention that increased overtime was available to him. This speculative proposition put forth by appellant does not transform a lateral transfer into a promotion. Although appellant cites Chief Stubbs's deposition testimony as evidence that placement in FIU was more prestigious, Chief Stubbs actually answered appellant's question as to whether or not it was more prestigious by responding "for some." The members of FIU keep their respective ranks, meaning that appellant would have remained a lieutenant.

{¶ 20} Examining the record in favor of appellant, a jury could find that the denial of transfer into a position with increased prestige, at least for some, could constitute an adverse employment action that creates a genuine issue of material fact.

■■ {¶ 21} Appellees argue that appellant must exhaust all administrative remedies contained in the CBA before a civil suit can be filed. This is not required in this case because "statutory rights are different from any contractual rights he may have under his collective-bargaining agreement. Therefore, while [appellant's] contractual rights are subject solely to the collective-bargaining agreement, his statutory rights are not. Further, '[a]ny agreement in a collective bargaining agreement to arbitrate a statutory claim * * * must be "clear and unmistakable." ' " *Haynes v. Ohio Turnpike Comm.*, 177 Ohio App.3d 1, 2008-Ohio-133, 893 N.E.2d 850, ¶ 18, quoting *Wright v. Universal Maritime Serv. Corp.* (1998), 525 U.S. 70, 82, 119 S.Ct. 391, 142 L.Ed.2d 361.

■ {¶ 22} Appellees cite *Dworning v. Euclid,* 119 Ohio St.3d 83, 2008-Ohio-3318, 892 N.E.2d 420, in support of their position. The Ohio Supreme Court stated, "[A]n employee or employee's agent who bargains with an employer relinquishes certain rights to obtain other benefits. Therefore, an employee who has entered into an employment contract may give up the right to immediately file a civil action for discrimination in a court and instead agree to appeal to a civil service commission or other administrative agency." Id. at ¶ 42. The CBA in

this case did not encompass the relinquishment of this right. There is no reference in the CBA to discrimination claims, but only to grievances generally. There is no provision to appeal a discrimination claim to "the civil service commission or other administrative agency." Id. The strong policy of remedying discrimination in its many forms, evidenced by the Ohio legislature's bestowing a private right of action, should not be abrogated by contract without clear evidence of intent by the parties.

{¶ 23} Appellees also argue that appellant is not qualified for the position because he is unable to participate in the necessary police academy training to become a sworn police officer. R.C. 124.41 prohibits those over the age of 35 from receiving an original appointment as a police officer, which would act to bar appellant from becoming a member of FIU. Appellees state that this precludes appellant from being qualified for the position and thus unable to make a prima facie case of age discrimination. However, Lieutenant Posante was allowed to attend police academy training even though he was over age 35. No explanation was given by appellees for the incongruity, so there remains some issue of material fact as to appellant's ability to set forth a prima facie case of age discrimination.

{¶ 24} Appellant argues that the statement made by Councilman Zachary Reed is direct evidence of age discrimination. In order for a statement to be evidence of an unlawful employment decision, appellant must show a "nexus between the improper motive and the decision-making process or personnel. Accordingly, courts consider (1) whether the comments were made by a decision maker; (2) whether the comments were related to the decision-making process; (3) whether they were more than vague, isolated, or ambiguous; and (4) whether they were proximate in time to the act of alleged discrimination." *Birch v. Cuyahoga Cty. Probate Court,* 173 Ohio App.3d 696, 2007-Ohio-6189, 880 N.E.2d 132, ¶ 23.

{¶ 25} The statement that no extensions in employment would be granted because there were "younger people out there who needed jobs" was not made by Chief Stubbs and did not lead to the decision not to grant appellant's transfer. This was an isolated statement made by a single member of the safety committee and not by the committee as a whole or the city council. Chief Stubbs testified that the statement factored into his decision merely by enforcing the fact that the grant of an extension of employment was not automatic and that appellant could not meet the five-year ability-to-use requirement in the CBA.

{¶ 26} If an appellant makes a prima facie case for age discrimination, then "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Wexler v. White's*

*Fine Furniture, Inc.* (C.A.6, 2003), 317 F.3d 564, 574. See also *Kline v. Tennessee Valley Auth.* (C.A.6, 1997), 128 F.3d 337. The inquiry into the employer's rationale is "whether a challenged practice serves, in a significant way, the legitimate employment goals of the employer." *Wards Cove Packing Co., Inc. v. Atonio* (1989), 490 U.S. 642, 659, 109 S.Ct. 2115, 104 L.Ed.2d 733.

{¶ 27} Appellees have put forth a reason as the basis for their decision to grant Lieutenant Posante's transfer request over appellant's, but that reason is discriminatory in its application.

{¶ 28} When appellant asked why he was not granted the transfer, Chief Stubbs cited the requirement contained in Article VI of the CBA that any transferee entering a position requiring specialized training have at least five years in which to use such training. Appellant, age 64 at the time of the request, did not have the requisite five years to use the specialized training, which the city would invest considerable resources in providing.

{¶ 29} Appellant argues that the only time this provision can ever be applied results in age discrimination. The city, in its motion for summary judgment, cited several situations, including planned early retirement, planned resignation to take other employment, or plans to move as situations where this provision of the CBA would bar a transfer that would not be based on age. The only practical situations where these confluent provisions act to bar a transfer or promotion are based on age.

{¶ 30} Cleveland City Codified Ordinance 135.07 requires that all firefighters and police officers retire at age 65. This ordinance leaves available to employees the option to seek a year-by-year extension in employment. One wishing to extend employment must submit an application to his department head. In the fire department's case, the chief of fire then must recommend the applicant for extension. An extension is granted only when the public safety director and city council grant the applicant's request.

{¶ 31} To show that appellees' reliance on this five-year ability-to-use requirement contained in the CBA in conjunction with the mandatory retirement provision was mere pretext, appellant argues that appellees were aware that employment extensions were always granted. Appellant relies on the fact that no firefighter who has requested an employment extension since Chief Stubbs took office in 2004 has been denied. This establishes a genuine issue of material fact that makes summary judgment inappropriate. There remains a question of whether appellees' stated business reason is only applicable based on age. Therefore, summary judgment was inappropriate to dispose of appellant's age-discrimination claim.

### Individual Liability

{¶ 32} Governmental immunity generally prohibits suit against the state and its political subdivisions except in limited circumstances. *Hodge v. Cleveland* (1998), Cuyahoga App. No. 72283, 1998 WL 742171. R.C. 2744 et seq. sets forth the protections the city enjoys as a political subdivision of the state. Appellant cites R.C. 2744.09 as removing these protections from the city and Chief Stubbs. This section specifically removes sovereign immunity from "political subdivisions" in actions by its employees involving matters arising out of the employment relationship. While appellant's claim against the city fits neatly into this statutory exception, the claim against Chief Stubbs does not. Appellant argues that Chief Stubbs remains liable on agency principles, but can cite no statutory provision in Ohio's governmental immunity statutes that would grant appellant the ability to maintain suit against Chief Stubbs individually for actions taken within the scope of his employment.

{¶ 33} The immunity granted to individual employees of a political subdivision by R.C. 2744.03(A)(6) applies because none of the exceptions put forth in that section match this situation. The actions of Chief Stubbs were not "manifestly outside the scope of [his] employment or official responsibilities," they were not "with malicious purpose, in bad faith, or in a wanton or reckless manner," and civil liability is not "expressly imposed upon the employee by a section of the Revised Code." R.C. 2744.03(A)(6)(a) through (c). The statutory basis of appellant's action, R.C. 4112.14, speaks in terms of "employers." Accordingly, the trial court properly granted summary judgment to Chief Stubbs.

### Promissory Estoppel and Sovereign Immunity

{¶ 34} Appellant asserts that the notice of available positions contained a promise that forms the basis of a claim against appellees. "Principles of equitable estoppel generally may not be applied against the state or its agencies when the act or omission relied on involves the exercise of a governmental function." *Sun Refining & Marketing Co. v. Brennan* (1987), 31 Ohio St.3d 306, 307, 31 OBR 584, 511 N.E.2d 112. See also *Hortman v. Miamisburg,* 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 25; *Cleveland v. W.E. Davis Co.* (July 18, 1996), Cuyahoga App. No. 69915, 1996 WL 403337.

{¶ 35} "Governmental functions are those duties that are imposed upon the state as obligations of sovereignty, such as protection from crime, fires, or contagion, or preserving the peace and health of citizens and protecting their property." *State ex rel. Scadden v. Willhite* (Mar. 26, 2002), Franklin App. No. 01AP–800, 2002 WL 452472, *7. See also *Neelon v. Conte* (Nov. 13, 1997), Cuyahoga App. No. 72646, 1997 WL 711232. The Ohio Revised Code defines a governmental function as "a function * * * that promotes or preserves the public

peace, health, safety, or welfare." R.C. 2744.01(C)(1). This section further states, "a·'governmental function' includes, * * * the provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection." R.C. 2744.01(C)(2)(a). Marshaling and maintaining an agency to protect the public from fire is an activity that is specifically defined as a governmental function.

{¶ 36} Appellant argues that employment decisions fall outside this statutory immunity. Employment decisions made in the exercise of a government function fall within this protection. *Western–Southern Life Ins. Co. v. Fridley* (1990), 69 Ohio App.3d 190, 590 N.E.2d 325.

{¶ 37} The exceptions to sovereign immunity contained in R.C. 2744.09 allow an employee to bring suit against a state or municipal employer. Resort to an equitable theory of recovery that is barred by sovereign immunity should not stand. Summary judgment was appropriate to dispose of this claim in the city's favor. Appellant's second assignment of error is overruled.

## Medical Records

{¶ 38} The city and Chief Stubbs cross-appeal the trial court's denial of their motion for production of appellant's [1] medical records for the past ten years. As a requirement for admission into FIU, appellant must be able to complete police academy training. One of the city's defenses is that appellant is unqualified for the position because he would be unable to complete the requisite training. The city also alleges that because appellant's damages are solely based on an increase in availability of overtime pay, appellant's medical records are necessary in order to show that appellant would suffer no actual damages. To show this, the city requested the names of every doctor appellant has seen in the last ten years, as well as signed releases allowing the city access to all medical records and prescriptions held by these physicians.

{¶ 39} A motion to compel discovery is the province of the trial court; however, application of privilege, R.C. 2317.02, is reviewed as a matter involving an issue of law, meaning this court reviews the decision de novo. *Ward v. Johnson's Indus. Caterers, Inc.* (June 25, 1998), Franklin App. No. 97APE11–1531, 1998 WL 336786. R.C. 2317.02(B)(1)(a) governs the physician-patient privilege; however, "R.C. 2317.02(B)(1)(a)(iii) is limited in scope by R.C. 2317.02(B)(3)(a), which provides: '(3)(a) If the testimonial privilege described in division (B)(1) of this section does not apply as provided in division (B)(1)(a)(iii) of this section, a physician or dentist may be compelled to testify or to submit to discovery under the Rules of Civil Procedure only as to a communication made to

---

1. For continuity, John Campolieti will continue to be addressed as appellant.

the physician or dentist by the patient in question in that relation, or the physician's or dentist's advice to the patient in question, that related causally or historically to physical or mental injuries that are relevant to issues in the * * * other civil action, or claim.' "

{¶ 40} "Pursuant to R.C. 2317.02(B)(3)(a), '[o]nly those communications (which includes medical records) that relate causally or historically to the injuries relevant to the civil action may be discovered.' " *Porter v. Litigation Mgt., Inc.* (2000), Cuyahoga App. No. 76159, 2000 WL 573197, *2, quoting *Ward*, 1998 WL 336786, *5. See also *Groening v. Pitney Bowes*, Cuyahoga App. No. 91394, 2009-Ohio-357, 2009 WL 205628.

{¶ 41} Appellees argue that appellant's damages stem only from the denial of increased overtime compensation. Appellant is still employed by the city as a firefighter and is presumably still earning overtime in this position. Unlimited access to appellant's medical records for the limited purpose of determining the amount of appellant's damages is inappropriate. These records are irrelevant for the purpose of determining whether appellant could do a less strenuous job than he is currently engaged in. The city's discovery request was clearly overbroad in its scope; therefore, the judgment of the trial court is affirmed.

## Conclusion

{¶ 42} Appellant has offered evidence that would allow this court to conclude that a reasonable jury could find in his favor in rebutting the city's reason for refusing his lateral transfer. Therefore, summary judgment was not appropriate to dispose of appellant's age-discrimination claim against the city. However, appellant cannot maintain the suit against Chief Stubbs in his individual capacity or a promissory-estoppel claim against the city or Chief Stubbs. Accordingly, the trial court's grant of summary judgment against Chief Stubbs as to both claims should be affirmed. The trial court's grant of summary judgment in favor of the city on appellant's promissory-estoppel claim was also appropriate. However, there remain genuine issues of material fact in appellant's age-discrimination claim against the city. The city should not be permitted to delve into appellant's sensitive medical records when there is no evidence that appellant was unfit for the position and Chief Stubbs testified that appellant was qualified for the position.

{¶ 43} The judgment is affirmed in part and reversed in part, and the cause is remanded to the lower court for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

MCMONAGLE, P.J., and BOYLE, J., concur.