**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Hauser v. Dayton Police Dept.,* **Slip Opinion No. 2014-Ohio-3636.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-3636

HAUSER, APPELLEE, *v.* THE CITY OF DAYTON POLICE DEPARTMENT ET AL.;

DAVIS, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Hauser v. Dayton Police Dept.,* Slip Opinion No. 2014-Ohio-3636.]**

*Political subdivisions—Employee immunity—R.C. 4112.01(A)(2) and 4112.02(A) do not expressly impose civil liability on political-subdivision employees so as to trigger the immunity exception in R.C. 2744.03(A)(6)(c).*

(Nos. 2013-0291 and 2013-0493—Submitted December 10, 2013—Decided August 28, 2014.)

APPEAL from and CERTIFIED by the Court of Appeals for Montgomery County, No. 24965, 2013-Ohio-11.

_____

FRENCH, J.

{¶ 1} This case concerns the immunity of political-subdivision employees and the statute that removes such immunity if "[c]ivil liability is expressly

imposed upon the employee by a section of the Revised Code." R.C. 2744.03(A)(6)(c). We conclude that the employment-discrimination provisions in R.C. 4112.01(A)(2) and 4112.02(A) do not expressly impose civil liability on such employees, but instead impose vicarious liability on the political-subdivision itself.

**Background**

{¶ 2} This appeal arises from an employment-discrimination action filed by appellee, Anita Hauser, against the Dayton Police Department ("DPD") and appellant, Major E. Mitchell Davis. At all relevant times, Hauser, a female over age 40, worked as a police officer for DPD under Davis's supervision. Hauser's complaint asserted a variety of claims, including age- and sex-based discrimination in violation of R.C. Chapter 4112 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. ("Title VII"). Specifically, Hauser alleged that DPD and Davis took employment actions against her that they did not take against those who were not in her statutorily protected class by imposing certain employment conditions, withholding her wages, subjecting her to "frivolous" investigations, and denying her opportunities for career advancement.

{¶ 3} Together, DPD and Davis moved for summary judgment, arguing, inter alia, that Davis was entitled to immunity under R.C. 2744.03(A)(6). Relying on the Eighth District's decision in *Campolieti v. Cleveland*, 184 Ohio App.3d 419, 2009-Ohio-5224, 921 N.E.2d 286 (8th Dist.), Davis argued that a supervisor employed by a political subdivision cannot be held individually liable in a discrimination action.

{¶ 4} The trial court granted Davis and DPD's motion for summary judgment on most of Hauser's claims, but denied the motion as it related to Hauser's claim of sex discrimination under R.C. 4112.02(A) and Title VII. The trial court also denied the motion as it related to Davis's claim of immunity, reasoning that there were genuine issues of material fact regarding Davis's status

as a manager or supervisor and regarding whether Davis had discriminated against Hauser based on sex. Hauser then filed a notice of voluntary dismissal pursuant to Civ.R. 41(A), and Davis appealed the trial court's decision denying him immunity pursuant to R.C. 2744.02(C).

{¶ 5} In a two-to-one decision, the court of appeals affirmed the trial court's denial of summary judgment to Davis on his claim of immunity. The majority relied on R.C. 2744.03(A)(6)(c), which states that an employee of a political subdivision is not entitled to immunity if a section of the Revised Code expressly imposes civil liability, and concluded that "civil liability is expressly imposed upon managers or supervisors, such as Davis, under R.C. 4112.01(A)(2) for their individual violations of R.C. 4112.02(A)." *Hauser v. Dayton Police Dept.*, 2013-Ohio-11, 986 N.E.2d 523, ¶ 28 (2d Dist.).

{¶ 6} The court of appeals certified that its judgment is in conflict with the Eighth District's judgment in *Campolieti*, 184 Ohio App.3d 419, 2009-Ohio-5224, 921 N.E.2d 286, as to the following question: "Whether civil liability is expressly imposed upon managers or supervisors under R.C. 4112.01(A)(2) for their individual violations of R.C. 4112.02(A) so that political subdivision employee immunity is lifted by R.C. 2744.03(A)(6)(c)." We agreed that a conflict exists and also accepted jurisdiction over Davis's discretionary appeal. 135 Ohio St.3d 1431, 2013-Ohio-1857, 986 N.E.2d 1021.

**Analysis**

{¶ 7} R.C. 2744.03(A)(6) provides an employee of a political subdivision immunity from tort liability, with three exceptions. At issue here is the exception in R.C. 2744.03(A)(6)(c), which removes immunity if "[c]ivil liability is expressly imposed upon the employee by a section of the Revised Code." The question in this appeal is whether R.C. 4112.02(A) "expressly impose[s]" civil liability upon an employee of a political subdivision in Davis's situation.

**{¶ 8}** R.C. 4112.02(A) makes it an unlawful discriminatory practice for "any employer" to discriminate on a number of different grounds—as relevant to this case, sex,—and a violation of that provision subjects the employer to civil liability. R.C. 4112.99. The General Assembly has defined "employer" to include "the state, any political subdivision of the state, any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." R.C. 4112.01(A)(2).[1]

**{¶ 9}** Our analysis centers on the meaning of the last category listed in R.C. 4112.01(A)(2)—"any person acting directly or indirectly in the interest of an employer." In construing statutes, our task is not to "pick out one sentence and disassociate it from the context." *State v. Wilson*, 77 Ohio St.3d 334, 336, 673 N.E.2d 1347 (1997). Rather, we construe statutes "as a whole," *State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 373, 116 N.E. 516 (1917), and based on how one would have reasonably understood the text "at the time" it was enacted. *Volz v. Volz*, 167 Ohio St. 141, 146, 146 N.E.2d 734 (1957). Based on statutory and historical context of the words chosen by the General Assembly, we conclude that R.C. 4112.01(A)(2) and 4112.02(A) do not expressly impose civil liability on political-subdivision employees.

**{¶ 10}** The definition of "employer" in R.C. 4112.01 was first enacted in 1959. Am.S.B. No. 10, 128 Ohio Laws 12. At that time, the definition, then codified as R.C. 4112.01(B), was worded slightly differently than it is today to conclude with the phrase "any person acting in the interest of an employer, directly or indirectly." When the General Assembly selected that phrase, it had already acquired a particular meaning in the context of employment-practices legislation. Twelve years earlier, the United States Supreme Court construed the same definition of employer—" 'any person acting in the interest of an employer,

---

[1] The word "person" is defined in R.C. 4112.01(A)(1) to include groups such as "partnerships, associations, organizations, [and] corporations."

directly or indirectly' "—in the context of the National Labor Relations Act of 1935. *Packard Motor Car Co. v. Natl. Labor Relations Bd.*, 330 U.S. 485, 488, 67 S.Ct. 789, 91 L.Ed. 1040 (1947), *superseded by statute on other grounds*, quoting 49 Stat. 450 (1935). The court held that the "obvious[]" purpose of this phrase was "to render *employers* responsible in labor practices for acts of any persons performed in their interests." (Emphasis added.) *Id*. at 489. The court rejected an automotive company's argument that several of its plant foremen were not "employees," but qualified as "employers," under the act, stating that the purpose of the definition of "employer" was to incorporate "the ancient maxim of the common law, respondeat superior, by which a principal is made liable for the tortious acts of his agent and the master for the wrongful acts of his servants." *Id*. This language was necessary, according to the court, because "Congress was creating a new class of wrongful acts to be known as unfair labor practices, and it could not be certain that the courts would apply the tort rule of respondeat superior to those derelictions." *Id*.

{¶ 11} Whether we agree or disagree with the *Packard* court's construction, we cannot ignore *Packard*'s historical relevance when examining the General Assembly's use 12 years later of the same language—"any person acting in the interest of an employer"—in what continues to be the essence of current R.C. 4112.01(A)(2). Giving this phrase the meaning it had "at the time" of its enactment, *Volz* at 146, we read it to mean what the United States Supreme Court said it meant: an employer faces "respondeat superior" liability "for acts of any persons performed in [the employer's] interests." *Packard* at 489. Respondeat superior speaks only to the vicarious liability of an *employer*; it does not simultaneously create an express cause of action against individual agents and servants of the employer. "Respondeat superior" means "[l]et the *master* answer," and at the time *Packard* was decided, the phrase was defined as the doctrine holding "a *master* * * * liable in certain cases for the wrongful acts of his

servant, and a *principal* for those of his agent." (Emphasis added.) *Black's Law Dictionary* 1546 (3d Ed.1933). Just as respondeat superior refers only to the vicarious liability of an employer, so too does R.C. 4112.01(A)(2) refer to the vicarious liability of a political-subdivision employer when the question is whether that statute "expressly" imposes liability on political-subdivision employees.

{¶ 12} Even though R.C. 4112.02(A) imposes liability only upon an "employer," the General Assembly knows how to expressly impose liability on individuals, and it has done so elsewhere in R.C. 4112.02. For example, ever since it first enacted R.C. Chapter 4112 in 1959, the General Assembly has declared it unlawful for "any person" to "aid, abet, incite, compel[,] or coerce the doing of * * * an unlawful discriminatory practice," or to "attempt directly or indirectly to commit any act" constituting "an unlawful discriminatory practice." Former R.C. 4112.02(H) (enacted by Am.S.B. No. 10, 128 Ohio Laws 12, 14), now codified as R.C. 4112.02(J). And in R.C. 4112.02(G), the General Assembly prohibits discrimination in a "place of public accommodation" by "any proprietor or any employee, keeper, or manager." Thus, an examination of R.C. 4112.02 reveals that when the General Assembly imposes individual liability for discriminatory practices, it does so expressly. If we were to conclude that the employer-discrimination provision in R.C. 4112.02(A) expressly imposes liability on employees, we would render the aiding-and-abetting provision in R.C. 4112.02(J) largely superfluous. That provision already holds individual employees liable for their participation in discriminatory practices. This context supports our determination that R.C. 4112.01(A)(1) and 4112.02(A) subject employers to vicarious liability and do not expressly impose liability on individual employees.

**{¶ 13}** Almost every federal circuit has reached the same conclusion in the context of Title VII, which defines "employer" to include certain persons[2] with 15 or more employees and "any agent of such a person." 42 U.S.C. 2000e(b). *See, e.g.*, *Busby v. Orlando*, 931 F.2d 764, 772 (11th Cir.1991) (holding that Title VII provides relief against the employer, "not individual employees"); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 406 (6th Cir.1997) ("Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII"); *Fantini v. Salem State College*, 557 F.3d 22, 30 (1st Cir.2009) (relying on decisions from ten other federal circuits to support the conclusion that "there is no individual employee liability under Title VII"). Courts have construed this agency language to reveal Congress's intent to "incorporate the principles of respondeat superior into Title VII rather than to expose either supervisors or co-workers to personal liability in employment discrimination cases." *Lenhardt v. Basic Inst. of Technology, Inc.*, 55 F.3d 377, 380 (8th Cir.1995); *see generally Meritor Savs. Bank, F.S.B. v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (Title VII's definition of employer incorporates agency principles and "evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible"). These courts have also relied on the fact that Title VII's definition of employer excludes persons with fewer than 15 employees. 42 U.S.C. 2000e(b). Because this exclusion was designed in large part to protect small businesses from "the costs associated with litigating discrimination claims," courts have found it "inconceivable" to suggest that "Congress intended to allow civil liability to run against individual employees." *Miller v. Maxwell's Internatl. Inc.*, 991 F.2d 583, 587 (9th Cir.1993); *see also Fantini* at 29-30.

---

[2] The word "person" is defined in 42 U.S.C. 2000e(a) to include groups such as "partnerships, associations, [and] corporations."

{¶ 14} Federal case law interpreting Title VII has persuasive value in cases like this one, which involves comparable provisions in R.C. Chapter 4112. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981). There is no material difference between R.C. 4112.01(A)(2)'s use of the phrase "person acting * * * in the interest of an employer" and Title VII's use of the phrase "agent of" an employer. 42 U.S.C. 2000e(b). Both phrases reflect the purpose of exposing employers to vicarious liability under the doctrine of respondeat superior. And, like Title VII, R.C. 4112.01(A)(2)'s definition of employer also excludes smaller employers, i.e., those with fewer than four employees. We have stated that the purpose of this exclusion is to protect such employers "from the burdens of R.C. Chapter 4112." *Collins v. Rizkana*, 73 Ohio St.3d 65, 74, 652 N.E.2d 653 (1995). Reading the statute to simultaneously exempt a small-business owner from liability yet impose liability on any individual working for a larger company obstructs this purpose. If a statute is susceptible to different meanings, we should favor the meaning that "furthers the legislative purpose" over the meaning that obstructs or hinders that purpose. *State ex rel. Toledo Edison Co. v. Clyde*, 76 Ohio St.3d 508, 513, 668 N.E.2d 498 (1996); *see Wathen*, 115 F.3d at 405 (conceding that a "narrow and literal reading" of 42 U.S.C. 2000e(b) implies that an employer's agent is a statutory employer for liability purposes, but rejecting that reading as producing "a result clearly at odds with the express intent of Congress").

{¶ 15} Reading the statute as a whole and consistently with the legislative intent behind R.C. Chapter 4112, we conclude that R.C. 4112.01(A)(2) and 4112.02(A) do not expressly impose civil liability on political-subdivision employees so as to exempt them from immunity under R.C. 2744.03(A)(6)(c), but rather subject a political-subdivision employer to vicarious liability for the discriminatory acts of its employees. We underscore, however, that our

conclusion is limited to the provisions dealing with "employer" discrimination, R.C. 4112.01(A)(2) and 4112.02(A). An individual political-subdivision employee still faces liability under other provisions of R.C. 4112.02 that expressly impose liability, including the aiding-and-abetting provision in R.C. 4112.02(J).

{¶ 16} Hauser argues that we are bound to reach the opposite conclusion based on our decision in *Genaro v. Cent. Transport, Inc.*, 84 Ohio St.3d 293, 703 N.E.2d 782 (1999). In that case, we held that "a supervisor/manager may be held jointly and/or severally liable with her/his employer for discriminatory conduct of the supervisor/manager in violation of R.C. Chapter 4112." *Id*. at syllabus. While it comes close, *Genaro* does not qualify as binding precedent on the immunity question in this case.

{¶ 17} The certified question in *Genaro* involved *private*-sector supervisors and managers, and it asked only whether such persons may be jointly and severally liable with an employer for conduct "in violation of R.C. Chapter 4112." *Id*. at 293, 300. We did not address whether the employer-discrimination provision in R.C. 4112.02(A) "expressly imposed" civil liability on a political-subdivision employee for purposes of the immunity exception in R.C. 2744.03(A)(6)(c). To be sure, our reasoning in this case calls the *Genaro* majority's reasoning into question, particularly its basis for distinguishing the prevailing interpretation of Title VII. *See Genaro* at 299 (declaring R.C. 4112.01(A)(2)'s definition of employer to be "broader" than Title VII's definition). But because *Genaro* did not squarely address the immunity question at issue here, it is not binding authority, and we need not apply *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, to decide whether we should overrule it.

## Conclusion

{¶ 18} R.C. 4112.01(A)(2) and 4112.02(A) do not expressly impose civil liability on political-subdivision employees so as to trigger the immunity

exception in R.C. 2744.03(A)(6)(c). Accordingly, we answer the certified question in the negative and reverse the judgment of the court of appeals.

Judgment reversed.

O'CONNOR, C.J., and LANZINGER, J., concur.

O'DONNELL, J., concurs in judgment only.

PFEIFER, KENNEDY, and O'NEILL, JJ., dissent.

_____

**PFEIFER, J., dissenting**.

{¶ 19} First, I continue to believe that any type of sovereign immunity is unconstitutional. *See Garrett v. Sandusky*, 68 Ohio St.3d 139, 144, 624 N.E.2d 704 (1994) (Pfeifer, J., concurring).

{¶ 20} Second, I continue to believe that the *Galatis* test (established in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256) is a "hopelessly random and formulaic approach to overruling precedent." *State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd. of Commrs.*, 115 Ohio St.3d 337, 2007-Ohio-5022, 875 N.E.2d 59, ¶ 50 (Pfeifer, J., dissenting). Once again, this court shies away from addressing a precedent with which it disagrees because of the unworkability of the *Galatis* test. *See Groch v. Gen. Motors Corp*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 221 (Lanzinger, J., concurring in part).

{¶ 21} Third, the statute in question need not be very rigorously examined to realize that the lead opinion is patently wrong. R.C. 4112.01(A)(2) defines "employer" broadly, to include "the state, any political subdivision of the state, * * * and any person acting directly or indirectly in the interest of an employer." It is clear that Major Davis was acting in the interest of an employer when he allegedly discriminated against Anita Hauser. According to the statutory scheme, a person acting in the interest of an employer is an "employer" and is subject to liability. The lead opinion in essence concludes that an employee of a political

subdivision who discriminates illegally is not a "person acting directly or indirectly in the interest of an employer."

{¶ 22} I would answer the certified question in the affirmative and affirm the judgment of the court of appeals.

{¶ 23} I dissent.

O'NEILL, J., concurs in the foregoing opinion.

_____

**KENNEDY, J**., **dissenting.**

{¶ 24} Regrettably, I must dissent. The lead opinion concludes that R.C. 4112.01(A)(2) does not expressly impose civil liability for unlawful discriminatory practices on political-subdivision supervisors. I cannot agree.

{¶ 25} R.C. 4112.02(A) prohibits sex discrimination by an "employer." We have already held that R.C. 4112.01(A)(2) holds individual supervisors and managers accountable as employers for their own discriminatory conduct in the workplace. *Genaro v. Cent. Transport, Inc*., 84 Ohio St.3d 293, 300, 703 N.E.2d 782 (1999). The only question is whether the Revised Code "expressly" imposes civil liability upon appellant, Major E. Mitchell Davis, a political-subdivision supervisor who would ordinarily be immune from such liability through sovereign immunity. *See* R.C. 2744.03(A)(6)(c). If it does, then we must affirm the judgment of the court of appeals.

{¶ 26} The Revised Code expressly imposes such liability. R.C. 4112.01(A)(2) states: " 'Employer' includes the state, any political subdivision of the state, any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." This provision, in conjunction with *Genaro*, expressly imposes civil liability for discriminatory acts on the state and its supervisory employees. In fact, imposing such liability is a main purpose of the statute.

**{¶ 27}** While I disagree with the holding in *Genaro*, it has been the law of Ohio since 1999, and my duty is to apply it. The General Assembly has amended R.C. 4112.01 five times since we issued *Genaro*, but it has never addressed this precedent through legislation.

**{¶ 28}** For these reasons, I dissent. I would hold that liability is expressly imposed on political-subdivision supervisors under R.C. 4112.01(A)(2) and *Genaro*, and I would answer the certified-conflict question accordingly.

———————————

Scaccia and Associates, L.L.C., and John J. Scaccia; and the Gittes Law Group and Frederick M. Gittes, for appellee.

Green & Green, Lawyers, and Thomas M. Green, for appellant.

Gerhardstein & Branch Co., L.P.A., and Alphonse A. Gerhardstein, urging affirmance for amicus curiae Ohio Association for Justice.

The Gittes Law Group, Frederick M. Gittes, and Jeffrey P. Vardaro, urging affirmance for amici curiae Ohio Employment Lawyers Association, Ohio NOW Education and Legal Defense Fund, and Ohio Poverty Law Center.

———————————