[Cite as *Crawford v. Notar*, 2016-Ohio-3010.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| JOHN L. CRAWFORD, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2015-T-0133** |
| MICHAEL NOTAR, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2014 CV 01540.

Judgment: Affirmed.

*Frank Consolo,* Consolo Law Firm, LTD., 212 Hoyt Block, 700 West St. Clair Avenue, Cleveland, OH 44113 (For Plaintiff-Appellant).

*Sherrie C. Massey* and *David Kane Smith,* Smith Peters & Kalail Co., L.P.A., 6480 Rockside Woods Blvd., South, Suite 300, Cleveland, OH 44131 (For Defendants-Appellees).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, John L. Crawford, appeals the judgment of the Trumbull County Court of Common Pleas, granting summary judgment in favor of defendants-appellees, Michael Notar and the Warren City School District Board of Education. The issue before this court is whether summary judgment is properly granted on a claim of retaliation for opposing an unlawful discriminatory practice where there were legitimate

reasons sufficient to justify the adverse employment action existing independent of and prior to the opposition to an unlawful discriminatory practice.  For the following reasons, we affirm the decision of the court below.

{¶2}	On August 11, 2014, Crawford filed a Complaint against Notar and the Board of Education in the Trumbull County Court of Common Pleas.

{¶3}	On September 10, 2014, Notar and the Board of Education filed their Answer, subsequently amended on September 18, 2014.

{¶4}	On May 8, 2015, Crawford filed an Amended Complaint.  Crawford alleged the following:

> 1.	Crawford is an African-American male who began working for the Board in or about November 2007 until his termination from employment with the Board effective June 30, 2013.
>
> * * *
>
> 6.	In or about January 2009 Crawford held the position of Supervisor of Student Services * * *.
>
> * * *
>
> 10.	In or about early February 2013, Crawford discovered that * * * Caucasian supervisors were all paid more than Crawford * * *.
>
> 11.	Crawford complained about his salary inequity compared to Caucasian supervisors to Notar and asked for a meeting to discuss the pay inequity.  Notar scheduled a meeting to take place on February 13, 2013 with Crawford to discuss Crawford's complaint that he was being paid less than Caucasian supervisors, but Notar cancelled it.  * * * Notar cancelled the meeting because he already knew of the pay inequities and decided he was going to recommend to the Board that Crawford's position be eliminated, which he did in fact do in March 2013.  * * *  This was done in retaliation for Crawford complaining that he was being treated differently and discriminated against in terms of pay because he is African-American.

2

**{¶5}** Crawford asserted claims of unlawful discriminatory practices, inter alia, that "Defendant Board and Defendant Notar terminated Crawford's employment in retaliation for his complaint of race discrimination in terms of his salary, in violation of R.C. 4112.02(A) and (I)."

**{¶6}** On May 22, 2015, Notar and the Board of Education filed their Answer to the Amended Complaint.

**{¶7}** On September 29, 2015, Notar and the Board of Education filed a Motion for Summary Judgment. In support of the Motion, the testimony of the following persons was submitted by way of affidavit.

**{¶8}** Notar testified that, from August 2012 to July 2014, he was employed by the Warren City School District Board of Education as its Superintendent.

> 7. When I interviewed with the Board in 2012 for the Superintendent's position, I told the Board that I would submit a plan for the elimination of both administrative and teachers positions in order to reduce expenditures. I had already concluded that the District was top-heavy with administrators, and that some administrative positions could be eliminated and job duties and responsibilities could be transferred to other employees.
>
> 8. The Board and I began discussions in August or September of 2012 about which administrative positions should be eliminated. I told the Board that it should eliminate five positions at the end of the school year: (a) Supervisor of Custodial Services (Neil Betts, who is Caucasian); (b) Executive Director of Human Resources (Angela Desai, who is Indian); (c) Communications Coordinator (Aaron Schwab, who is Caucasian); (d) Coordinator of Student Services (John Crawford, who is African-American); and (e) Technology Supervisor (Kay Kalmer, who is Caucasian).
>
> * * *
>
> 10. The Board and I decided to wait until the spring of 2013 to eliminate the five positions.

3

11.    The Associate Superintendent, however, changed her plans and announced that she would retire at the end of December 2012 rather than the end of the school year.

12.    This caused the Board and me to decide that the Director of Human Resources' position should be eliminated in conjunction with the retirement of the Associate Superintendent so that the new Associate Superintendent could begin sharing in fulfilling some of the Director of Human Resources' duties immediately upon being hired.

* * *

16.    At its October 30, 2012 meeting the Board tabled the resolution to suspend [Director of Human Resources] Desai's contract * * *.  The Board indicated to me that it had decided to wait until the end of the school year to eliminate the two positions, when it would also eliminate the positions of the other four employees, including Crawford.

* * *

21.    I informed Crawford in March of 2013 that the Board would vote on the elimination of his position at its March 19, 2013 meeting.

* * *

24.    Crawford never complained to me that his salary was less than * * * any other employee['s].

25.    I never told Regina Patterson, any other Board Member, or any other person that Crawford had ever complained about his salary or claimed that his salary was less than other Caucasian employees.

{¶9}    Regina Patterson testified that she is African-American and that she was president of the Board of Education in 2012 and 2013.  She affirmed that "in August or September of 2012, the Board began discussions with [Notar] to determine which positions * * * should be eliminated," and that "Notar told the Board that it should eliminate * * * Coordinator of Student Services [Crawford]," among others.  Patterson

4

further affirmed that the Board "decided to wait until the spring of 2013 to eliminate the five positions."

{¶10} Patterson testified that, at its March 19, 2013 meeting, "[t]he Board voted 4-0 to eliminate the Coordinator of Student Services position and to terminate Crawford's employment."

> 19. Andre Coleman (who is African-American), Robert Faulkner, Jr. (who is African-American), Patricia Limperos (who is Caucasian), and I voted in favor of eliminating the Coordinator of Student Services position and terminating Crawford's employment. Board Member Rhonda Baldwin-Amorganos (who is Caucasian), was absent from the Board meeting and did not vote.
>
> 20. I voted to eliminate the Coordinator of Student Services position and to terminate Crawford's employment because the Board employed too many administrators, I believed that his position could be eliminated and his job duties and functions could be performed by other employees, and the action would reduce the Board's expenditures, which was necessary in light of the District's poor financial condition and declining enrollment.
>
> * * *
>
> 23. Neither Notar nor any other person ever told me that Crawford had complained that his salary was less than * * * any other employee['s].

{¶11} Andre Coleman, Robert Faulkner, Patricia Limperos, and Rhonda Baldwin-Amorganos, all members of the Board of Education at the relevant times, testified consistently with Notar and Patterson.

{¶12} Angela Lewis, Treasurer for the Warren City School District Board of Education, testified that she had cautioned "the Board about its deficit spending and the poor financial condition of the Warren City School District" and recommended "to the Board that it consider eliminating positions and suspending contracts in reductions in force because of the District's poor financial condition and prognosis." Lewis "was

5

present at a Board meeting in September of 2012 where Superintendent Michael Notar * * * recommended to the Board that it eliminate five positions at the end of the 2012-2013 school year: * * * [including] Coordinator of Student Services [Crawford]."

{¶13} On November 16, 2015, Crawford filed his Memorandum in Opposition to Defendant's Motion for Summary Judgment. In a subsequent filing on November 19, 2015, Crawford advised the trial court that "Plaintiff opposes summary judgment only on his third cause of action (the retaliation claim against both Defendants)."

{¶14} By affidavit, Crawford testified that "probably around mid to late January 2013," he "walked into Notar's office in the Administration building and explained to him that during the review of [his] job description * * * [he] questioned * * * why [he] was being paid 'classified non-supervisory.'"

10. I told Notar about me taking over [Community Outreach Supervisor, William] Carnahan's duties such as the truancy cases and not being compensated for these extra duties. I told him Carnahan did not work during the summer but I did have to work all year long and was still being paid less salary. I told him other classified employees were being paid more than me. * * * I told Notar that I was the only African-American classified employee. I said their salaries, meaning Aaron Schwab and Jill Merolla [Caucasian employees], were nearly double mine and it was not fair. He told me he would look into it and we would meet to discuss it further.

* * *

11. In the meantime, after I met with Notar in his office in January 2013 I received a letter from [Assistant Superintendent] Steve Chiaro dated January 30, 2013 telling me that effective February 4, 2013 I was to report each work day to a different school and no longer to report to my office in the Administration building. My office in the Administration building was in the Student Services Department and I had two secretaries. Once I was ordered to report to the different schools I had to use whatever space was available and no longer had a secretary. * * *

6

12. On March 14, 2013 Tracy Preston [Notar's Secretary] called me and asked me to come over to the Administration building to meet with Notar. I thought it was to talk about my salary complaint. Instead when I went into Notar's office he was sitting there along with Chiaro. Notar told me to sit down and he told me that my position was being terminated effective the end of the school year. That is all he said. Chiaro never said anything. I was completely shocked. The only thing I remember saying is "I thought every school district had to have a truancy officer." No one responded. They just stood up and left. I later got a certified letter from Angela Lewis with a copy of the Board's March 19, 2013 resolution terminating my contract.

{¶15} On November 23, 2015, the trial court issued a Judgment Entry granting Notar and the Board of Education's Motion for Summary Judgment "in its entirety." The court held that the defendants were entitled to summary judgment because Crawford failed to produce evidence "to establish that Notar's recommendation to the Board that it eliminate Crawford's position as part of a reorganization of administrative positions was caused by Crawford's purported complaint to Notar about his salary." The court also noted Crawford's failure to produce evidence that the Board of Education was aware of Crawford's salary complaint.

{¶16} On December 16, 2015, Crawford filed his Notice of Appeal.

{¶17} On appeal, Crawford raises the following assignments of error:

{¶18} "[1.] The trial court committed prejudicial error in failing to find that material facts are in dispute and granting summary judgment with regard to Appellant's retaliation claim based on the self-serving, vague and incomplete affidavits of Defendant Notar, Treasurer Angela Lewis and the Board Members which alleged that Defendant Notar recommended the elimination of Appellant's job in August or September 2012, before Appellant complained of his discriminatory salary."

7

{¶19} "[2.] The trial court committed prejudicial error in determining that Crawford had to prove that the individual Board members were aware that Crawford engaged in protected activity in order to present a *prima facie* case of retaliation."

{¶20} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "Under this standard, the reviewing court conducts an independent review of the evidence before the trial court and renders a decision de novo, i.e., as a matter of law and without deference to the conclusions of the lower court." (Citation omitted.) *Bank of Am., N.A. v. Babik*, 11th Dist. Geauga No. 2014-G-3243, 2016-Ohio-1156, ¶ 19.

{¶21} Under R.C. 4112.02, "[i]t shall be an unlawful discriminatory practice: (A) For any employer, because of * * * race * * * to discharge without just cause * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment," and "(I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this chapter * * *."

8

{¶22} "To establish a case of retaliation, a claimant must prove that (1) she engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action." *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 13. "[T]o prevail on a retaliation claim, a plaintiff must show that retaliation is a determinative factor—not just a motivating factor—in the employer's decision to take adverse employment action." (Citation omitted.) *Nebozuk v. Abercrombie & Fitch, Co.*, 10th Dist. Franklin No. 13AP-591, 2014-Ohio-1600, ¶ 45; *Wholf v. Tremco, Inc.*, 2015-Ohio-171, 26 N.E.3d 902, ¶ 29 (8th Dist.) ("the plain language of R.C. 4112.02(I) provides a 'cause-in-fact' causation standard rather than a mixed-motives standard").

{¶23} In the first assignment of error, Crawford contends the affidavit testimony of Notar, Patterson, the other Board Members, and Treasurer Lewis is insufficient to support summary judgment in that it was "self-serving, vague and incomplete." Crawford notes that the affidavits are "virtually identical" and provide no details as to "what was actually discussed." Appellant's Brief at 10; *Deane v. Longo*, 11th Dist. Trumbull No. 2353, 1976 Ohio App. LEXIS 6142, 3 (Sept. 30, 1976) (rejecting affidavit testimony as "vague" and "totally uncorroborated").

{¶24} We find the affidavits in question sufficient to support summary judgment and the trial court's construal of the evidence to show, as a matter of law, "that Notar recommended to the Board in August or September of 2012 that it eliminate Crawford's position at the end of the year, [and that] the Board agreed to do so." The witnesses

9

agree that, in August or September 2012, Notar proposed the elimination of Crawford's and others' positions due to economic considerations, but that no action would be taken until the following spring. The premature attempt to eliminate Desai's position at the end of 2012 was motivated by special circumstances well-attested in the evidence. In other respects, the attempt to terminate Desai's position generally corroborates the affidavit testimony, i.e., that the Board of Education was seeking in 2012 to decrease expenses by the elimination of administrative positions. The fact that several other employment contracts were terminated at the same time as Crawford's further serves to corroborate the affidavit testimony.

{¶25} Crawford argues that there is no evidence of Notar proposing the elimination of specific positions (Desai's excepted) in the minutes of the Board of Education's meetings in 2012. As the trial court properly pointed out, "this is not dispositive of the issue, as a board of education is permitted to discuss certain topics in executive session, including the employment or dismissal of an employee." R.C. 121.22(G)(1) ("the members of a public body may hold an executive session * * * [t]o consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official"). The minutes confirm that, at several school board meetings in the fall of 2012, executive sessions were called "to discuss Consideration of Appointment, Employment, Promotion, etc. of Public Employees."

{¶26} Crawford relies on case law for the proposition "that the mere discussion of budget cuts that might result in the termination of some employees['] positions [is] not the purpose of the exception under R.C. 121.22(G)(1)." *State ex rel. Brothers v. Bd. of Putnam Cty. Commrs.*, 3rd Dist. Putnam No. 12-13-05, 2014-Ohio-2717, ¶ 38. Such

10

reliance is misplaced. Whether discussion of the elimination of Crawford's position fell within the exception of R.C. 121.22(G)(1) has no bearing on the evidentiary value of the affidavits. Whether proper or not, the Board of Education was invoking R.C. 121.22(G)(1) during the relevant time period in order to discuss the employment of school employees in executive session.

**{¶27}** Crawford also contends that Notar's and the others' testimony is suspect because he was never advised that his position was being eliminated. We find nothing inherently improbable about an employer not informing an employee that an informal decision has been made to eliminate the employee's position until such time that the decision is acted upon, particularly in light of the Board of Education's experience with Desai. In any event, such speculations as Crawford raises are insufficient to impeach the credibility of the movants' affidavits. *Wheatley v. Marietta College*, 4th Dist. Washington No. 14CA18, 2016-Ohio-949, ¶ 45 ("'[m]ere speculation and unsupported conclusory assertions are not sufficient' to meet the nonmovant's reciprocal burden to set forth specific facts to show that a genuine issue exists") (citation omitted); *Zoldan v. Lordstown*, 2014-Ohio-5472, 25 N.E.3d 451, ¶ 28 (11th Dist.) (a party's "beliefs, which he conceded were speculative and unsupported by any independent corroborative facts, are insufficient to create a genuine issue of material fact").

**{¶28}** In sum, it cannot be reasonably inferred, based on the evidence in the record, that Notar and the Board of Education did not contemplate the elimination of Crawford's position several months before he raised his claim of a disparity of salary based on race.

**{¶29}** The first assignment of error is without merit.

11

{¶30} In the second assignment of error, Crawford argues that the trial court erred in ruling that the Board of Education was entitled to judgment on the grounds that it was unaware of his salary complaint. "The Board, under the age old doctrine of *respondeat superior*, is vicariously liable for the retaliatory actions of its employee, Superintendent Notar." Appellant's Brief at 14.

{¶31} Crawford relies on the Ohio Supreme Court's decision in *Hauser v. Dayton Police Dept.*, 140 Ohio St.3d 268, 2014-Ohio-3636, 17 N.E.3d 554, for the proposition that "the employment-discrimination provisions in R.C. 4112.01(A)(2) and 4112.02(A) do not expressly impose civil liability on such employees, but instead impose vicarious liability on the political-subdivision itself." *Id.* at ¶ 1. Crawford's reliance on *Hauser* is misplaced for several reasons.

{¶32} At issue in *Hauser* was whether the immunity afforded the employees of a political subdivision under R.C. 2744.03(A)(6)(c) applied to acts of employment discrimination in violation of R.C. 4112.02(A). *Id.* at ¶ 6. The Supreme Court's conclusion, based on the text of R.C. 4112.02(A), was that the statute "makes it an unlawful discriminatory practice for 'any employer' to discriminate on a number of different grounds," but does "not expressly impose civil liability on political-subdivision employees." *Id.* at ¶ 8 and 9. The Court recognized that "[a]n individual political-subdivision employee still faces liability under other provisions of R.C. 4112.02 that expressly impose liability, including the aiding-and-abetting provision in R.C. 4112.02(J)." *Id.* at ¶ 15. Similar to R.C. 4112.02(J) (the aiding-and-abetting provision), the retaliation provision of the statute imposes liability on "any person [who]

discriminate[s] in any manner against any other person because that person has opposed any unlawful discriminatory practice." R.C. 4112.02(I).

{¶33} Crawford's claims of retaliation are based on Notar's alleged retaliatory conduct, not that of the Board of Education. Respondeat superior liability has only a very limited application in the context of retaliation claims, because such claims depend on evidence that "the defending party was aware that the claimant had engaged in that activity" and the existence of "a causal connection between the protected activity and adverse action." *Greer-Burger*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, at ¶ 13. The retaliatory motive must be a cause-in-fact or determinative factor in Crawford's termination, not just a motivating factor. *Goodsite v. Norfolk S. Ry. Co.*, 573 Fed.Appx. 572, 586 (6th Cir.2014) ("[i]f the wrongful actions were merely a motivating factor in the termination decision, the claim fails as a matter of law").

{¶34} Crawford seeks to impose liability on the Board of Education under what has been described as "dual causation" or "cat's paw" liability: "[i]n the employment context, an unbiased decisionmaker is a cat's paw in situations where a biased subordinate, who lacks decisionmaking power, uses the unbiased decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory or retaliatory employment action." *Smith v. Ohio Dept. of Pub. Safety*, 2013-Ohio-4210, 997 N.E.2d 597, ¶ 55 (10th Dist.). But even when considering retaliation claims under such theories of liability, the courts have insisted on a plaintiff demonstrating a direct causal connection between the subordinate's discriminatory animus and the decisionmaker's adverse employment action. *Staub v. Proctor Hosp.*, 562 U.S. 411, 422, 131 S.Ct. 1186, 179 L.E.2d 144 (2011) ("if a supervisor performs an act motivated by [discriminatory] animus

13

that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable") (footnote omitted) (emphasis sic).

{¶35} In the present case, there is no evidence that the Board of Education had any knowledge of Crawford's salary complaint or that it was motivated by anything but economic considerations when it terminated Crawford's contract. *Seoane-Vazquez v. Ohio State Univ.*, 577 Fed.Appx. 418, 428-429 (6th Cir.2014) (employer entitled to summary judgment so long as "factors that were untainted by retaliation" were sufficient to justify the adverse employment action); *Laughlin v. Cleveland*, 102 F.Supp.3d 944, 952 (N.D.Ohio 2015) ("as long as Santora had a legitimate basis for giving Laughlin a bad review and the City had a legitimate reason for terminating Laughlin, Laughlin loses").

{¶36} The second assignment of error is without merit.

{¶37} In response to Crawford's assignments of error, Notar and the Board of Education raised cross-assignments of error. Local App.R. 16(C)(4) ("[p]ursuant to Ohio App.R. 3(C)(2) or R.C. 2505.22, if appellee is defending a judgment or order appealed by an appellant on a ground other than that relied on by the trial court, but does not wish to change the judgment or order, the basis for the alternative defense shall be set forth separately in a cross-assignment of error in the Appellee's Brief"). Having found no merit in Crawford's assignments of error, we need not consider the cross-assignments of error, raising alternative arguments for affirming the lower court's judgment. *Arndt v. P & M Ltd.*, 11th Dist. Portage No. 2013-P-0027, 2014-Ohio-3076, ¶ 169.

{¶38} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, granting summary judgment in favor of Notar and the Board of Education, is affirmed. Costs to be taxed against appellant.


CYNTHIA WESTCOTT RICE, P.J.,

THOMAS R. WRIGHT, J.,

concur.