[Cite as *Callaway v. The Akron Police Dept.*, 2021-Ohio-4412.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

DEBORAH CALLAWAY

    Appellant

    v.

AKRON POLICE DEPARTMENT, et al.

    Appellees

C.A. No.    29852

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2019-01-0035

DECISION AND JOURNAL ENTRY

Dated: December 15, 2021

TEODOSIO, Judge.

{¶1} Plaintiff-Appellant, Deborah Callaway, appeals from the judgment of the Summit County Court of Common Pleas, entering summary judgment in favor of Defendant-Appellees, the Akron Police Department, the City of Akron ("the City"), and Officer Michael Orrand (collectively, "Defendants"). This Court affirms in part and reverses in part.

I.

{¶2} One evening in July, a motorcyclist nearly struck Officer Orrand's cruiser as he and his canine partner, Thunder, were patrolling the area of Lovers Lane and South Arlington Street. Officer Orrand followed the motorcyclist to a driveway behind a set of apartments, parked his cruiser, and approached the motorcycle on foot. A brief exchange ensued during which Officer Orrand issued the motorcyclist several commands and the motorcyclist refused to comply. The motorcyclist then ran around the corner of the apartment building, and Officer Orrand and Thunder pursued him.

{¶3} Ms. Callaway lived in the apartment building in question. It is undisputed that, at some point, Thunder entered her apartment and bit her on the leg. According to Officer Orrand, he released Thunder into the threshold of Ms. Callaway's apartment to apprehend the motorcyclist and to ensure his own safety. It was his position that the motorcyclist tried to close himself inside the apartment's screen door, refused commands to come out, ignored several warnings related to Thunder's release, and tried backing away into the apartment. It also was Officer Orrand's position that the apartment was completely dark, he did not know anyone else was inside, and he did not know if the motorcyclist might obtain a weapon inside. Meanwhile, it was Ms. Callaway's position that the motorcyclist only ran past her door that evening and never tried to enter her apartment. According to Ms. Callaway, she was standing in her front room focusing on her television when Thunder ran in and attacked her without warning.

{¶4} Ms. Callaway filed suit against Defendants for the injuries and damages she sustained as a result of having been bitten by Thunder. Her suit included allegations that Defendants were per se liable for her damages as Thunder's keepers and acted negligently, wantonly, and recklessly in his handling. Her suit also included allegations that the Akron Police Department and the City were negligent and reckless in training and supervising Officer Orrand and Thunder and that Officer Orrand engaged in wanton and reckless conduct when he released Thunder into her apartment. With respect to Officer Orrand, Ms. Callaway brought suit against him both individually and in his official capacity as an employee of the Akron Police Department and the City.

{¶5} Defendants moved for summary judgment on the basis that they were statutorily immune from suit. Ms. Callaway then filed a brief in opposition to summary judgment, and Defendants filed a reply. The trial court determined that the Akron Police Department could not

be sued independently of the City as a separate legal entity and awarded the police department summary judgment on that basis. It further determined that the City and Officer Orrand were statutorily immune from suit and likewise awarded them summary judgment.

{¶6} Ms. Callaway now appeals from the trial court's summary judgment determination and raises two assignments of error for our review.

II.

### ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SINCE GENUINE ISSUES OF MATERIAL FACT EXISTED DEMONSTRATING THAT THE DEFENDANTS CITY OF AKRON AND OFFICER MICHAEL ORRAND ARE LIABLE FOR THE INJURIES TO PLAINTIFF DEBORAH CALLAWAY UNDER OHIO REVISED CODE §2744.02(B)(5) AS LIABILITY IS EXPRESSLY IMPOSED BY STATUTE UNDER OHIO REVISED CODE §955.28 SINCE DEFENDANTS WERE THE "KEEPERS" OF A DOG UNDER SAID STATUTE.

{¶7} In her first assignment of error, Ms. Callaway argues that the trial court erred when it awarded summary judgment to the City and Officer Orrand based on its conclusion that the exceptions to immunity set forth in R.C. 2744.02(B)(5) and 2744.03(A)(6)(c) were inapplicable. It is Ms. Callaway's position that R.C. 955.28 expressly imposes liability upon the City and Officer Orrand such that they are not entitled to immunity. This Court rejects her argument.

{¶8} Appellate review of an award of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977),

citing Civ.R. 56(C). A court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992). A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor. *Perez v. Scripps-Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988).

{¶9} The Supreme Court of Ohio has set forth the nature of this burden-shifting paradigm:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

{¶10} Initially, we note that Ms. Callaway has not challenged the trial court's award of summary judgment to the Akron Police Department. Her argument only concerns its award of judgment to the City and Officer Orrand. As such, this Court will not address the trial court's judgment in favor of the Akron Police Department. In reviewing Ms. Callaway's assignment of error, we limit our review to the court's award of summary judgment to the City and Officer

Orrand. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

**The City**

{¶11} "[T]o determine whether a political subdivision is immune from liability, we engage in a three-tiered analysis." *Moss v. Lorain Cty. Bd. of Mental Retardation*, 9th Dist. Lorain No. 13CA010335, 2014-Ohio-969, ¶ 10. Under the first tier, a general grant of immunity will be afforded to a political subdivision for injuries or damages that it or its employee allegedly caused by an act or omission "in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). Under the second tier, the political subdivision may lose that immunity if one of the five exceptions to immunity outlined in R.C. 2744.02(B) applies. *Moss* at ¶ 10. Under the third tier, "immunity may be restored, and the political subdivision will not be liable, if one of the defenses enumerated in R.C. 2744.03(A) applies." *Id.*

{¶12} It is undisputed that the City was entitled to a general grant of immunity under the first tier of the three-tiered analysis. *See* R.C. 2744.02(A)(1). Ms. Callaway concedes that the City is a political subdivision and that she sustained injuries in connection with a governmental function (i.e., the operation of a police department and the maintenance, care, training, harboring, and deployment of a police dog). Further, she has limited her argument under the second tier of the analysis. The only exception to immunity that Ms. Callaway has argued in the context of this assignment of error is the exception set forth in R.C. 2744.02(B)(5). Thus, the only issues are whether that exception applied, *see* R.C. 2744.02(B)(5), and, if so, whether the City established one of the defenses outlined in R.C. 2744.03(A).

{¶13} Under R.C. 2744.02(B)(5), a political subdivision will be liable

for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code,

including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

"[T]he plain language of R.C. 2744.02(B)(5) requires [a] statute to 'expressly impose' civil liability upon [a] political subdivision." *Alicea v. City of Lorain*, 9th Dist. Lorain No. 17CA011182, 2018-Ohio-2538, ¶ 13. "It is not sufficient that a statute imposes civil liability in general for R.C. 2744.02(B)(5) to apply * * *." *Bonkoski v. Lorain Cty.*, 9th Dist. Lorain Nos. 17CA011094, 11CA011120, and 17CA011122, 2018-Ohio-2540, ¶ 9.

{¶14} In response to the City's assertion that it was immune from suit, Ms. Callaway argued that an exception to that immunity applied because R.C. 955.28 expressly imposed liability upon the City. *See* R.C. 2744.02(B)(5). That statute provides, in relevant part, that

[t]he owner, keeper, or harborer of a dog is liable in damages for any injury * * * that is caused by the dog, unless the injury * * * was caused to the person * * * who, at the time, was committing or attempting to commit criminal trespass or another criminal offense other than a minor misdemeanor on the property of the owner, keeper, or harborer, or was committing or attempting to commit a criminal offense other than a minor misdemeanor against any person, or was teasing, tormenting, or abusing the dog on the owner's, keeper's, or harborer's property.

R.C. 955.28(B). Ms. Callaway argued that the City was Thunder's keeper, so it was statutorily liable for her injuries. The trial court disagreed and found that R.C. 955.28(B) is a general liability statute that does not expressly impose liability upon political subdivisions.

{¶15} This Court agrees with the trial court's conclusion that R.C. 955.28(B) is a general liability statute. The statute's plain language makes no mention of political subdivisions. *See Alicea* at ¶ 13. It imposes liability upon any owner, keeper, or harborer of a dog. *See* R.C. 955.28(B). Thus, the statute is one of general application and "does not expressly impose civil

liability upon political subdivisions * * *." *Alden v. Dorn*, 9th Dist. Summit No. 27878, 2016-Ohio-554, ¶ 11. *See also Jamison v. Stark Cty. Bd. of Commrs.*, 5th Dist. Stark No. 2014CA00044, 2014-Ohio-4906, ¶ 18. Because the statute does not expressly impose civil liability upon the City, the trial court correctly determined that the exception to immunity outlined in R.C. 2744.02(B)(5) was inapplicable. *See Bonkoski* at ¶ 9.

{¶16} The record reflects that Ms. Callaway failed to carry her reciprocal burden under the second tier of the three-tiered immunity analysis. *See Moss*, 2014-Ohio-969, at ¶ 10. She was unable to show that the City lost its general grant of immunity under one of the exceptions contained in R.C. 2744.02(B)(5). Accordingly, it was unnecessary for the City to set forth evidence of a defense under the third tier of the analysis. *See Davis v. City of Akron*, 9th Dist. Summit No. 22428, 2005-Ohio-3629, ¶ 11. The trial court did not err when it awarded summary judgment to the City. To the extent Ms. Callaway contends otherwise, her assignment of error is overruled.

**Officer Orrand**

{¶17} "[I]mmunity extends to the individual employees of a political subdivision. However, we do not apply the same three-tiered analysis * * * when considering an employee's claim of immunity." *Fisher v. Ahmed*, 9th Dist. Summit No. 29340, 2020-Ohio-1196, ¶ 25. An employee's statutory grant of immunity stems from R.C. 2744.03(A)(6). *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶ 10. That subsection "provides an employee of a political subdivision with immunity from tort liability, with three exceptions." *Hauser v. Dayton Police Dept.*, 140 Ohio St.3d 268, 2014-Ohio-3636, ¶ 7. Relevant to this assignment of error is the exception that provides an employee with immunity unless

> [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section

of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

R.C. 2744.03(A)(6)(c). The exception in "R.C. 2744.03(A)(6)(c) tracks the language of R.C. 2744.02(B)(5)" and likewise applies only if "a section of the Revised Code *expressly* imposes liability * * *." (Emphasis sic.) *Campbell v. Burton*, 92 Ohio St.3d 336, 343 (2001).[1]

{¶18} Ms. Callaway does not dispute that Officer Orrand was entitled to a general grant of immunity as an employee of the City who was engaging in a governmental function when she was injured. *See* R.C. 2744.03(A)(6). She argues that the trial court erred when it awarded him summary judgment because he was expressly liable for her injuries under R.C. 955.28(B), and thus, an exception to his immunity applied. *See* R.C. 2744.04(A)(6)(c). We have already determined, however, that R.C. 955.28(B) is a general liability statute. *See* Discussion, *supra*. By its plain language, it does not expressly impose civil liability upon political subdivisions or their employees. *See Alden*, 2016-Ohio-554, ¶ 11; *Jamison*, 2014-Ohio-4906, ¶ 22-23. Instead, it applies to any person who is an owner, keeper, or harborer of a dog. *See* R.C. 955.28(B). "Words which refer to an entire class which may include employees of a political subdivision but do not expressly, explicitly, or directly reference employees of a political subdivision are not sufficient to expressly impose liability under R.C. 2744.03(A)(6)(c)." *Jamison* at ¶ 22. Because R.C. 955.28(B) does not expressly impose civil liability upon employees of a political

---

[1] *Campbell* interpreted a prior version of R.C. 2744.03(A)(6)(c). The prior version simply provided that an employee was immune from liability unless "[l]iability [was] expressly imposed upon the employee by a section of the Revised Code." Former R.C. 2744.03(A)(6)(c). The legislature later amended the statute to refer specifically to "civil" liability and to add the second sentence that appears in the current version of the statute. *See* R.C. 2744.03(A)(6)(c). Thus, the

subdivision, Ms. Callaway could not rely on it to establish an exception to Officer Orrand's immunity under R.C. 2744.03(A)(6)(c).

{¶19} In reaching the foregoing conclusion, this Court is mindful that the Eleventh District has reached a contrary result. In *Hicks v. Allen*, the Eleventh District found that a deputy sheriff was liable for injuries caused by his canine partner because R.C. 955.28(B) expressly imposed liability upon him as the dog's keeper. *Hicks v. Allen*, 11th Dist. Ashtabula No. 2005-A-0002, 2007-Ohio-693, ¶ 12-23. Our sister district based its conclusion strictly upon the definition of the term "keeper" and the fact that the deputy sheriff satisfied that definition as a person having physical charge of the dog. *Id.* at ¶ 23. Ms. Callaway asks this Court to adopt the holding in *Hicks*, but we decline to do so. We have already determined in a prior decision that R.C. 955.28(B) does not expressly impose civil liability upon political subdivisions or their employees. *See Alden*, 2016-Ohio-554, at ¶ 11 (police sergeant whose canine bit the plaintiff was entitled to summary judgment because R.C. 955.28(B) did not expressly impose liability upon him). Our prior decision, the plain language of R.C. 2744.03(A)(6)(c) and R.C. 955.28(B), the similarities between R.C. 2744.03(A)(6)(c) and R.C. 2744.02(B)(5), and the caselaw interpreting the language set forth in R.C. 2744.02(B)(5) compel us to reach the same result in this matter. *See also Jamison*, 2014-Ohio-4906, at ¶ 22-23.

{¶20} The trial court did not err when it concluded that Officer Orrand could not be held liable for Ms. Callaway's injuries pursuant to R.C. 2744.03(A)(6)(c). We reject Ms. Callaway's argument to the contrary. Accordingly, her first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

---

amendment brought the language of R.C. 2744.03(A)(6)(c) even closer in line with the language of R.C. 2744.02(B)(5). *Compare* R.C. 2744.03(A)(6)(c) *with* R.C. 2744.02(B)(5).

THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SINCE GENUINE ISSUES OF MATERIAL FACT EXISTED DEMONSTRATING THAT DEFENDANT OFFICER MICHAEL ORRAND'S ACTIONS IN DEPLOYING THE K-9, THUNDER, WERE ACTIONS DONE IN A WANTON/RECKLESS MANNER UNDER OHIO REVISED CODE §2744.02(A)(6)(b) IMPOSING LIABILITY ON DEFENDANT MICHAEL ORRAND.

{¶21} In her second assignment of error, Ms. Callaway argues that the trial court erred when it awarded summary judgment to Officer Orrand based on its conclusion that the immunity exception set forth in R.C. 2744.03(A)(6)(b) did not apply. She argues that genuine issues of material fact remain as to whether Officer Orrand acted in a wanton and/or reckless manner. We agree.

{¶22} Because Ms. Callaway's second assignment of error likewise challenges an award of summary judgment, we incorporate the summary judgment standard set forth in her first assignment of error. *See* Discussion, *supra*. Thus, we examine the record to determine whether Officer Orrand demonstrated that there were no genuine issues of material fact for trial, that he was entitled to judgment as a matter of law, and that it appeared from the evidence that reasonable minds could only come to a conclusion in his favor. *Temple*, 50 Ohio St.3d at 327.

{¶23} As previously noted, an employee of a political subdivision enjoys immunity under R.C. 2744.03(A)(6) unless one of three exceptions applies. *Hauser*, 140 Ohio St.3d 268, 2014-Ohio-3636, at ¶ 7. Relevant to this assignment of error is the exception that negates an employee's immunity if his "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner * * *." R.C. 2744.03(A)(6)(b). Because Ms. Callaway only alleged that Officer Orrand acted in a wanton or reckless manner, we need not consider whether there was evidence that he acted with malicious purpose or in bad faith.

{¶24} "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, paragraph three of the syllabus. Meanwhile, "[r]eckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus. "'The actor must be conscious that his conduct will in all probability result in injury.' There must be a 'perverse disregard of a known risk.'" (Internal citation omitted.) *Chunyo v. Gauntner*, 9th Dist. Summit No. 28346, 2017-Ohio-5555, ¶ 9, quoting *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, paragraph three of the syllabus.

{¶25} Officer Orrand testified by deposition. Also relevant to his motion for summary judgment were an incident report he completed, a use of force report he completed, a written review completed by his supervisor, and affidavits that he and his supervisor completed. In summarizing Officer Orrand's version of the events, this Court draws upon various portions of the foregoing sources to present a cohesive narrative.

{¶26} Officer Orrand had been working with Thunder for almost two years when these events transpired. He was fully certified as a canine officer, and Thunder was dual certified in narcotics detection and criminal apprehension. The two also participated in weekly trainings apart from their scheduled field work. Before this incident, no one had ever registered a complaint against Thunder or Officer Orrand, related to his use of Thunder.

{¶27} Shortly after 9:00 p.m., a motorcyclist traveling in the wrong lane narrowly avoided a head on collision with Officer Orrand. Officer Orrand followed the motorcyclist, later identified as Mr. McCraney, onto Talbot Avenue and into a driveway behind a set of apartments.

Once Mr. McCraney stopped his motorcycle and Officer Orrand parked his cruiser, Officer Orrand attempted to detain him. Mr. McCraney was uncooperative, however, and acted as though he might run. Officer Orrand instructed Mr. McCraney not to run and told him that, if he did so, he would release Thunder. Despite the warning, Mr. McCraney ran around the corner of the apartment building. Officer Orrand and Thunder briefly chased him. The chase ended about fifteen feet away at the front door of Ms. Callaway's apartment.

{¶28} Ms. Callaway's apartment had a front door and a screen door. The front door was open and, when Officer Orrand and Thunder ran up to the apartment, Mr. McCraney was attempting to close himself inside by pulling the screen door shut. Officer Orrand grabbed the screen door with his left hand and grabbed Thunder's collar with his right. As he did so, Mr. McCraney remained inside the apartment's threshold. Officer Orrand ordered Mr. McCraney to come outside and repeatedly stated that he would release Thunder if Mr. McCraney did not comply. According to Officer Orrand, Mr. McCraney refused his commands and went to retreat further back into the apartment where everything was dark. Officer Orrand indicated that he released Thunder because he could not see inside the apartment, Mr. McCraney's evasive behavior was worrisome, he did not know if Mr. McCraney was familiar with the apartment or would have access to weapons inside, and he would be in a dangerous tactical position if he allowed Mr. McCraney to retreat inside.

{¶29} As soon as Officer Orrand released Thunder, Mr. McCraney fell backwards into Ms. Callaway and knocked her down. Before that moment, Officer Orrand did not know Ms. Callaway was inside the apartment because Mr. McCraney was blocking the entryway and the apartment was completely dark. He indicated that Thunder first engaged Mr. McCraney and tried to bite him, or possibly did bite him, but quickly focused on Ms. Callaway and bit her leg.

Officer Orrand estimated that less than one second elapsed between the time he released Thunder and the time Thunder bit Ms. Callaway.

{¶30} When he realized Thunder had bitten Ms. Callaway, Officer Orrand directed his attention to her, and Mr. McCraney fled the apartment. Officer Orrand spoke with Ms. Callaway while they were waiting for the paramedics to arrive, and he asked if she could identify the man who had entered her apartment. Ms. Callaway provided Officer Orrand with the man's nickname and said that she had been trying to push him out of her apartment from behind. Officer Orrand confirmed that the police were able to identify Mr. McCraney based on the nickname Ms. Callaway had provided. Mr. McCraney was later convicted of several charges, including aggravated trespass.

{¶31} Sergeant Christopher Davis completed a use of force report as Officer Orrand's supervising sergeant that evening. The report included a narrative that the sergeant drafted after speaking with Officer Orrand, interviewing Ms. Callaway at the hospital, and reviewing the evidence. Sergeant Davis indicated that his narrative was meant to be a summary of what happened based on his piecing together all of the information he received.

{¶32} In his narrative, Sergeant Davis wrote that Mr. McCraney fled on foot, opened Ms. Callaway's apartment door, and attempted to enter her apartment. He wrote that Ms. Callaway recognized Mr. McCraney, who she identified by nickname, and tried to push him out of her apartment. At the same time, Officer Orrand entered the apartment and attempted to grab Mr. McCraney, who pulled away. After Mr. McCraney pulled away, Officer Orrand released Thunder. It was the sergeant's conclusion that Officer Orrand made a split-second decision, employed justifiable force to ensure his safety, and did not violate any rules, regulations, or procedures of the Akron Police Department.

{¶33} There is no dispute that, at the time Ms. Callaway was injured, Officer Orrand was employed as a police officer for the City and was engaging in a governmental function. *See Cunningham v. City of Akron*, 9th Dist. Summit No. 22818, 2006-Ohio-519, ¶ 17, citing R.C. 2744.01(C)(1) and (2) (police and law enforcement services constitute governmental functions). Because Officer Orrand set forth evidence to that effect, he satisfied his initial *Dresher* burden and demonstrated that he was entitled to a general grant of immunity under R.C. 2744.03(A)(6). *See Dresher*, 75 Ohio St.3d at 293. The burden then shifted to Ms. Callaway to establish an exception to his immunity. *See id.*

{¶34} Ms. Callaway testified by deposition. It was her testimony that she lived alone and got home a few minutes before this incident occurred. When she arrived home, she left her front door open so that only her screen door was closed. She then turned on her bathroom light and a small lamp and stood in her front room "trying to get the TV in." Ms. Callaway indicated that she was still "trying to get the TV in" when a dog burst into the room and attacked her. According to Ms. Callaway, she never heard her screen door open and, at first, had no idea that she had been bitten by a police dog. She testified that she remained standing when the dog bit her and began yelling for help. Officer Orrand then entered the apartment and, in attempting to remove Thunder, fell on top of her.

{¶35} Ms. Callaway indicated that she knew Mr. McCraney because he often visited his uncle who was her neighbor. Yet, she denied that Mr. McCraney tried to enter her apartment that evening. It was her testimony that she saw him run past her front door at some point before Thunder bit her. She denied that she ever spoke with Officer Orrand about Mr. McCraney. Further, she could not recall speaking with Sergeant Davis at the hospital or telling any police officers that Mr. McCraney had tried entering her apartment.

{¶36} Apart from her own deposition, Ms. Callaway relied on several other pieces of evidence in support of her argument. She attached to her brief in opposition to summary judgment a copy of the City's policies and procedures related to the training and use of canines in the police department ("the canine procedure"), her own affidavit, and an affidavit from a professional expert canine evaluator. Notably, the canine procedure was improper Civ.R. 56(C) evidence as Ms. Callaway failed to incorporate it by reference through a properly framed affidavit. *See Wallner v. Thorne*, 189 Ohio App.3d 161, 2010-Ohio-2146, ¶ 18 (9th Dist.). Nevertheless, Defendants did not object to the admission of that evidence, and the trial court considered it. *See id.* (trial court has discretion to consider improper Civ.R. 56 evidence when no objection has been made). Because the trial court considered the canine procedure, we likewise consider it in reviewing Ms. Callaway's argument.

{¶37} The canine procedure addresses verbal warnings that an officer must issue before releasing his canine. It provides, in relevant part, as follows:

> Verbal Warning – Must state that a police K-9 will be released if the suspect * * * fails to surrender. The warning will be issued no less than two separate times and should state clearly that the dog will bite. Adequate time will be given before the K-9 is deployed to allow the suspect to surrender. Additional warnings may be necessary depending on the size of the search area or structure.

The canine procedure further provides:

> Verbal warnings will be given prior to deployment in area and structure searches, and when possible, prior to criminal apprehensions and foot pursuits.

In her affidavit, Ms. Callaway averred that, at no time before she saw Thunder, did she "hear any warning, from anyone, a Police Officer or otherwise, that a dog was going to be released either into [her] home or anywhere else * * *."

{¶38} The second affidavit that Ms. Callaway attached to her brief in opposition was completed by a professional expert canine evaluator. The canine evaluator wrote that he had

more than forty years of experience in several canine-related fields, including the fields of animal control, police canine training, and canine behavior. He averred, based on his review of the discovery materials, that Ms. Callaway's version of the events was "a much more likely version of what transpired" and that, in his opinion, Mr. McCraney was never in Ms. Callaway's apartment. According to the canine evaluator, Thunder would not have released Mr. McCraney if he engaged him because police canines are trained to continue biting until they are commanded to release. The canine evaluator also opined that Officer Orrand did not issue the required verbal warnings or ensure that innocent bystanders were not present before releasing Thunder. It was his opinion that Officer Orrand violated the canine procedure and acted in a reckless manner.

{¶39} Regarding the canine evaluator's affidavit, it was the trial court's determination that his affidavit did not create any genuine issue of material fact insofar as he opined that Officer Orrand violated the canine procedure or acted in a reckless or wanton manner. The trial court determined that those opinions were merely legal conclusions about the officer's culpability, not issues of fact. *See Shalkhauser v. Medina*, 148 Ohio App.3d 41, 2002-Ohio-222, ¶ 41 (9th Dist.) (expert's opinion that officers violated department policy and engaged in wanton and reckless conduct was a legal conclusion that did not create an issue of fact for trial). Ms. Callaway has not addressed the court's determination and has made no attempt to argue that the canine evaluator did not, in fact, merely offer legal conclusions. *See* App.R. 16(A)(7). Absent any argument in that regard, this Court is not inclined to overturn that aspect of the trial court's summary judgment ruling. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). Moreover, we will not consider the canine evaluator's affidavit insofar as he offered an opinion as to whether Officer Orrand's or Ms.

Callaway's version of the events was more likely to have occurred. An expert may not offer an opinion on a matter "'[about] which the jury is capable of forming a competent conclusion.'" *Hill v. Wadsworth-Rittman Area Hosp.*, 185 Ohio App.3d 788, 2009-Ohio-5421, ¶ 19 (9th Dist.), quoting *Burens v. Indus. Comm.*, 162 Ohio St. 549 (1955), paragraph two of the syllabus. The truth or falsity of Officer Orrand's and Ms. Callaway's testimony is not a matter that would be outside the common knowledge of jurors. *See Rasalan v. TJX Operating Cos., Inc.*, 129 Ohio App.3d 364, 369 (9th Dist.1998). Thus, Ms. Callaway could not rely on the foregoing aspects of the canine evaluator's affidavit to prove that a genuine issue of material fact existed for trial.

{¶40} The trial court determined that Officer Orrand was entitled to summary judgment because there was no evidence that he acted in a wanton or reckless manner. The court found no evidence that Officer Orrand knew anyone was inside Ms. Callaway's apartment. Because he did not know Ms. Callaway was inside and could be injured if he released Thunder, the trial court reasoned, the question of whether Officer Orrand issued the required verbal warnings before releasing Thunder was immaterial. The court further found that there was no dispute of fact as to whether Mr. McCraney entered Ms. Callaway's apartment. The court reasoned that Officer Orrand only described Mr. McCraney as standing in the threshold of the apartment's door, not inside the apartment. Given that Officer Orrand was in pursuit of Mr. McCraney, that Mr. McCraney posed a danger to him if allowed inside the apartment, and that he did not know anyone else was inside the apartment, the court concluded that Officer Orrand's actions were reasonable under the circumstances and not wanton or reckless in nature.

{¶41} Upon review, we must conclude that the trial court erred when it found that there were no genuine issues of material fact, that Officer Orrand was entitled to judgment as a matter of law, and that reasonable minds could only come to a conclusion in his favor. *See Temple*, 50

Ohio St.3d at 327. A summary judgment determination requires a court to view the evidence in a light most favorable to the non-moving party. *See Murphy*, 65 Ohio St.3d at 358-359. It also requires a court to refrain from choosing among reasonable inferences or resolving questions of credibility in favor of the moving party. *See Perez*, 35 Ohio St.3d at 218. A review of the record herein reveals that the question of whether Officer Orrand engaged in wanton or reckless conduct cannot be resolved on summary judgment.

{¶42} In their respective depositions, Officer Orrand and Ms. Callaway gave entirely distinct accountings of the events that took place on the night of the incident. Further, the statements that Officer Orrand and Sergeant Davis reported Ms. Callaway having made that night are distinctly different from the testimony she gave and the statements she made in her affidavit. Ms. Callaway specifically testified that she only saw Mr. McCraney run past her apartment door that evening, that he never came inside her door, that she never heard any warnings issue before Thunder was released, and that she was standing alone in her front room when she was bitten. If Officer Orrand, in fact, released Thunder into Ms. Callaway's residence without warning and without regard for whether Mr. McCraney was present, reasonable minds could differ as to whether his actions were wanton and/or reckless. *See Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, at paragraphs three and four of the syllabus. As the non-moving party, Ms. Callaway was entitled to have any evidentiary conflicts and issues of credibility resolved in her favor. *See Murphy* at 358-359; *Perez* at 218. Because she set forth evidence that there was a genuine issue of material fact about which reasonable minds could differ, we must conclude that she satisfied her reciprocal *Dresher* burden and that the trial court erred when it awarded summary judgment to Officer Orrand. *See Dresher*, 75 Ohio St.3d at 293. Accordingly, Ms. Callaway's second assignment of error is sustained.

III.

{¶43}  Ms. Callaway's second assignment of error is sustained.  Her first assignment of error is overruled.  The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶44} I concur in the majority's resolution of Ms. Callaway's first assignment of error. However, I respectfully dissent as to its determination with respect to her second assignment of error as I would affirm the judgment of the trial court in its entirety. While the officer's actions may have been negligent, I cannot say that there was a genuine issue of material fact with respect to whether they were wanton and/or reckless.

APPEARANCES:

RONALD A. APELT, Attorney at Law, for Appellant.

EVE V. BELFANCE, Director of Law, and JOHN CHRISTOPHER REECE and MICHAEL J. DEFIBAUGH, Assistant Directors of Law, for Appellees.