[Cite as *M.J. v. Akron City School Dist.*, 2023-Ohio-4764.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

W.H. (A MINOR), et al.
M.J. (A MINOR), et al.

     Appellees

     v.

AKRON CITY SCHOOL DISTRICT
BOARD OF EDUCATION, et al.

     Appellants

C.A. Nos.     30517
                     30518

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   CV-2021-03-0984
                   CV-2021-03-0994

DECISION AND JOURNAL ENTRY

Dated: December 27, 2023

---

SUTTON, Presiding Judge.

**{¶1}** Defendants-Appellants, Akron City School District ("APS"), Akron City School District Board of Education ("the Board of Education"), Philomena Vincente, Teresa Morrison, Jennifer Ramon, Holly DeLisi, and Patricia Derita appeal from the judgment of the Summit County Court of Common Pleas denying summary judgment, in part, on the basis of sovereign immunity. This Court affirms in part, reverses, in part, and remands for further proceedings.

I.

**Relevant Background**

**{¶2}** This appeal arises from circumstances surrounding Christopher Hendon's impersonation of a police officer in April 2017 at Leggett Community Learning Center, an APS elementary school. Mr. Hendon, who had been sent by a parent to pick up her child, entered Leggett CLC wearing SWAT gear, including a bullet proof vest. Mr. Hendon was armed with a gun and

taser. When Ms. DeLisi, the school secretary, took the parent's phone call regarding Mr. Hendon, the parent told Ms. DeLisi "she was sending in her police friend to deal with her son[.]" APS employees did not ask Mr. Hendon to sign in, nor did they verify he was an actual police officer. The employees assumed Mr. Hendon was a police officer based upon the conversation they had with the child's mother, Mr. Hendon's clothing, and the fact Mr. Hendon was talking to other police officers in the school parking lot. The APS employees allowed Mr. Hendon, an armed stranger, unfettered access to Leggett CLC, and its students, on several occasions without ever verifying his identity or employment. Mr. Hendon also brought another individual into Leggett CLC named "James" who was also allowed access to the school and students without verification of his identity or employment. James was not dressed as a police officer and wore plain clothing. During visits to Leggett CLC, Mr. Hendon disciplined students by handcuffing them and making them do physical exercise. Mr. Hendon yelled and cursed at students, assaulted students, "arrested" students, and took students from school property in a private vehicle.[1] Although Mr. Hendon spoke with Leggett CLC administrators and teachers about his desire to reinstitute a "scared straight" program at APS, the employees knew no such program existed at APS. Mr. Hendon was also given access to certain students' report cards, medical, and contact information.

{¶3} Appellees filed federal lawsuits against Appellants which were disposed of in favor of Appellants, with only state claims remaining. Appellees then filed the following causes of action, in state court, against Appellants alleging: (1) violation of R.C. 3319.321, release of confidential records; (2) violation of R.C. 4112.02(G), public accommodation (race); (3) violation of R.C. 4112.02(G), public accommodation (disability); (4) violation of R.C. 2151.421, failure to

---

[1] When Mr. Hendon handcuffed students, the students believed they were being arrested and would be taken to jail.

report child abuse; (5) violation of R.C. 2744.02(B)(2)/(B)(4), negligence-political subdivision; (6) violation of R.C. 2744.03(A)(5), negligence-political subdivision; (7) violation of R.C. 2919.22, negligence per se; (8) violation of R.C. 2307.60, criminal liability for assault; (9) invasion of privacy; and (10) loss of consortium.

{¶4} After exchange of discovery, Appellants filed motions for summary judgment on the basis of statutory immunity and Appellees opposed those motions. Appellants also filed replies in support of summary judgment. The trial court granted Appellants' motions for summary judgment, in part, and denied them, in part. In so doing, the trial court granted APS and the Board of Education immunity on all claims except those alleging a violation of R.C. 4112.02(G), for public accommodation as to race and disability. Further, the trial court granted statutory immunity to David James, the former superintendent of APS. The trial court, pursuant to R.C. 2744.03(6)(B), denied statutory immunity to Ms. Vincente, Ms. Morrison, Ms. Ramon, Ms. DeLisi, and Ms. Derita because reasonable minds could differ as to whether their acts or omissions were done in a reckless manner.

{¶5} Appellants filed a timely appeal raising a sole assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED IN DENYING [] APPELLANTS, AND EACH OF THEM, SUMMARY JUDGMENT IN FULL BASED ON STATUTORY IMMUNITY AND, ALTERNATIVELY, ON THE MERITS OF THEIR CLAIMS.**

{¶6} In their sole assignment of error, Appellants argue the trial court erred in denying them summary judgment based upon statutory immunity.

{¶7} Summary judgment is appropriate if:

(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the movant bears the initial burden of demonstrating there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 293, quoting Civ.R. 56(E). We review a summary judgment order de novo. *Grafton v. Ohio Edison Co*., 77 Ohio St.3d 102, 105 (1996).

{¶8}　　"Ohio's Political Subdivision Tort Liability Act, which governs political subdivision liability and immunity, is codified in R.C. 2744.01 et seq." *Bevelacqua v. Tancak*, 9th Dist. Lorain No. 21CA011797, 2022-Ohio-4442, ¶ 10, citing *McNamara v. City of Rittman*, 125 Ohio App.3d 33, 43 (9th Dist.1998). "The Act 'sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability for injury or loss to property.'" *Id*. quoting *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, ¶ 9. "Under the first tier of the analysis, political subdivisions enjoy a general grant of immunity for any injuries, deaths, or losses 'allegedly caused by any act or omission of the political subdivision or [its] employee * * * in connection with a governmental or proprietary function.'" *Id*. quoting R.C. 2744.02(A)(1). "That immunity, however, is not absolute." *McConnell v. Dudley*, 158 Ohio St.3d 388, 2019-Ohio-4740, ¶ 21.

{¶9}　　"Under the second tier of the analysis, a political subdivision's 'comprehensive immunity can be abrogated pursuant to any of the five exceptions set forth at R.C. 2744.02(B).'"

*Bevelacqua* at ¶ 11, quoting *Shalkhauser v. Medina*, 148 Ohio App.3d 41, 46 (9th Dist.2002). "If one of those exceptions applies, R.C. 2744.02(B) also provides several 'full defenses' a political subdivision may assert in specific instances." *Id.*, *see* R.C. 2744.02(B)(1)(a)-(c). "Those full defenses, if proven, will result in the political subdivision retaining its cloak of immunity." *Id.*, citing *McConnell* at ¶ 22-23. "If no full defense is proven or available to the political subdivision under R.C. 2744.02(B)(1), then the analysis proceeds to the third tier." *Id.* "Under the third tier, immunity 'may be restored, and the political subdivision will not be liable, if one of the defenses enumerated in R.C. 2744.03(A) applies.'" *Id.* quoting *Moss v. Lorain Cty. Bd. of Mental Retardation*, 9th Dist. Lorain No. 13CA010335, 2014-Ohio-969, ¶ 10.

{¶10} For the individual employees of political subdivisions, however, the three-tiered immunity analysis for political subdivisions does not apply. *Huber v. State Farm Mutual Auto Insurance Co.*, 9th Dist. Summit No. 29962, 2022-Ohio-3022, ¶ 70, citing *Rankin v. Cuyahoga Cty. Dept. of Children and Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, ¶ 36. Instead, we look "directly to R.C. 2744.03(A)(6), which prescribes immunities that an employee of a political subdivision may assert to establish nonliability in a civil action for damages allegedly caused by an act or omission in connection with a governmental or proprietary function." *Id.* citing *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, ¶ 7. Relevant to this case is R.C. 2744.03(A)(6)(b), which states that an employee is immune from liability unless his "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner * * *." Specifically, Appellees, in their opposition to summary judgment, argued the APS employees' acts or omissions were done in a wanton or reckless manner.

{¶11} In *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, paragraphs 1-4 of the syllabus, the Supreme Court of Ohio explained:

1. "Willful," "wanton," and "reckless" describe different and distinct degrees of care and are not interchangeable.

2. Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrong acts with knowledge or appreciation of the likelihood of resulting injury.

3. Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result.

4. Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.

(Internal citations omitted.)

### APS/Board of Education

{¶12}   In its order, the trial court found, under the first tier, "[t]he parties agree that [APS] and [the] Board of Education are political subdivisions pursuant to [R.C.] 2744.01(F)[.]"  It found, however, there is a genuine issue of material fact regarding whether one of the exceptions under the second tier applies. The trial court stated:

> After reviewing the numerous depositions and exhibits filed in this case, this [c]ourt determines that a genuine issue of material fact exists regarding whether the plaintiffs were denied benefits and whether they were treated less favorably.  The [c]ourt, at the summary judgment phase, is not tasked with weighing the evidence. [] Reasonable minds could differ regarding what occurred in August 2017.  It is not for the [c]ourt to decide if the affected children were treated less favorably than their fellow students or weigh the evidence regarding these allegations.  As such, this [c]ourt denies [APS's] and the Board of Education's [m]otion for [s]ummary [j]udgment regarding Plaintiffs' respective [s]econd and [t]hird [c]auses of [a]ction.

{¶13}   Upon review of the record, we conclude the trial court erred when it failed to conduct all three parts of the political-subdivision immunity analysis before ruling on Appellants' motions for summary judgment.  The trial court ended its analysis at the second tier and, in so

doing, did not analyze whether any R.C. 2744.03 defenses applied to restore immunity to APS and the Board of Education.

**{¶14}** Therefore, because the trial court failed to complete the entire political-subdivision immunity analysis, we reverse its decision and remand for further proceedings. Further, because the trial court's ruling on this issue may render APS's and the Board of Education's argument moot, we decline to address it because it is premature. *See Stetz v. Copley Fairlawn Sch. Dist.*, 9th Dist. Summit No. 26885, 2013-Ohio-5411, ¶ 6-8 (This Court reversed and remanded the trial court's denial of summary judgment, based upon statutory immunity, where the trial court failed to conduct the three tiered analysis for political subdivisions.).

**Individual Employees**

**{¶15}** Regarding the individual employees, Ms. Vincente, Ms. Morrison, Ms. Ramon, Ms. DeLisi, and Ms. Derita, the trial court denied summary judgment on the basis of statutory immunity, stating:

> There is no question that everyone at Leggett [CLC] assumed that Mr. Hendon was a police officer. [] However, the safety policy specifically stated everyone who was a visitor to the building had to sign in, with no exception for police officers. Indeed, Ms. Vincente confirmed during her deposition testimony that a mother of one of the students who lived nearby and was very active at the school, signed in and out each time she arrived, even though she was well known to the staff, Conversely, Mr. Hendon was completely unknown to the staff but due to him posing as some sort of officer, he was given unabated access to the school. Ms. Vincente and her staff were aware of security issues involving schools and the high risk of strangers coming into the school with no identification ([i.e.], "James" whose last name is still unknown.)
>
> What [Mr.] Hendon ultimately did while he was continuously allowed to interact with the students without any verification of who he actually was or whether he was as officer, underscores the necessity of the safety policies at the school and why they must be followed. The employees failed to abide by the policies which this [c]ourt finds a jury could determine amounts to recklessness as defined by Ohio courts.

> Beyond allowing access to the children, [the employees] [including] [Ms.] Morrison and [Ms.] Ramon, two teachers at the school who seem to have had the most interaction with Mr. Hendon, also allowed [Mr.] Hendon to discipline the students. In the case of M[.]J[.] (a student in [Ms.] Ramon's classroom), it is alleged that [Mr.] Hendon took the child out of the classroom, led him down the hallway, cursed at him, grabbed him by the shirt collar and slammed him against a wall. W[.]H[.] alleges he was handcuffed and led down the hallway, with [Ms.] Morrison (his classroom teacher) following behind him, led to the office and placed in another room where he was handcuffed to other children and left there for hours. None of these actions by [Mr.] Hendon were even remotely allowed or condoned by the Akron Public School Handbook. However, all of the employees acquiesced to [Mr.] Hendon not only disciplining the students, but handcuffing them and in the case of some children, permitted [Mr.] Hendon or James to take the children off campus in an unmarked and unknown vehicle. * * *

> When viewing the facts in the light most favorable to the Plaintiffs, this [c]ourt finds that reasonable minds could differ as to whether the actions of the [employees] support a determination of conscious disregard for a known or obvious risk.

{¶16} Here, the record reveals the employees allowed Mr. Hendon unsupervised access to elementary school students at Leggett CLC without verification of his identity or employment over the course of several days. Mr. Hendon was armed with a gun and taser when he entered the building. The employees also allowed "James," last name unknown, to have the same access to students at Leggett CLC. James wore plain clothing, and was not assumed to be a police officer. The employees made dangerous assumptions regarding Mr. Hendon based upon his clothing, photos he showed them on his cell phone, and information from a student's mother who claimed Mr. Hendon, her boyfriend, was a police officer.

{¶17} Ms. Vincente specifically acknowledged she had initial doubts about whether Mr. Hendon was a police officer because she questioned whether this student's mother would be dating a police officer. Importantly, although employees knew a "scared straight" program did not exist at APS, they allowed Mr. Hendon to discipline students, some with disabilities, by "arresting" them at school. Mr. Hendon handcuffed children and threatened to take them to jail. W.H. reported children in handcuffs, kept in the nurse's office, were crying in front of APS employees. Mr.

Hendon handcuffed W.H. and threatened to use his taser on W.H. if he ran away. Mr. Hendon was allowed to remove students from their classrooms and take them into private rooms or areas to discipline them.

{¶18} M.J. reported Mr. Hendon threw him against a wall, grabbed him by his shirt collar, cursed at him, and called him derogatory names. M.J. also reported Mr. Hendon and James took two students off school property in a blue van. Prior to leaving in the van, the students were crying in the school office because they were going to "jail." M.J. also testified Mr. Hendon pushed a student's head up against the door frame to Ms. Vincente's office. M.J. indicated Ms. Vincente and everyone in the office saw Mr. Hendon take the students from the office away in the van. M.J. also testified Mr. Hendon, after being called by a teacher, took him and another student behind a curtain in the cafeteria and made them do 100 push-ups, 100 sit ups, 100 wall sits, and 100 jumping jacks. M.J., who has asthma, told Mr. Hendon he was having trouble breathing and Mr. Hendon responded, "[t]oo bad."

{¶19} Indeed, the employees allowed Mr. Hendon and James, two individuals with no official position with APS or law enforcement, to put students in handcuffs, "arrest" students, and take them to "jail." The employees gave Mr. Hendon and James access to students' confidential information and students *themselves* with no supervision. Employees also witnessed Mr. Hendon and James taking students from APS property. Although employees testified they had not seen elementary school students handcuffed by police officers in the past, and Mr. Hendon was not dressed the same as other police officers at the school, no one questioned Mr. Hendon's repeated presence at Leggett CLC or whether he had any authority to discipline students. None of the employees contacted law enforcement to verify Mr. Hendon's or James' employment with either the Akron Police Department or the juvenile detention center. Ms. Morrison indicated it was above

her "pay grade" to check Mr. Hendon's credentials. The employees did not ask Mr. Hendon or James for their identification or a badge number. Instead, based upon incorrect assumptions, the employees allowed Mr. Hendon, who was armed, and James to freely walk the halls of Leggett CLC and discipline students.

{¶20} As previously indicated, "wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson*, 134 Ohio St.3d 380, at paragraph 3 of the syllabus. Further, reckless conduct "is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph 4 of the syllabus.

{¶21} In viewing the facts in a light most favorable to Appellees, the non-moving party, reasonable minds could differ as to whether the "acts or omissions [of the employees] were [done] * * * in a wanton or reckless manner * * *." As such, the employees are not entitled to statutory immunity as a matter of law. *See Harris v. Hilderbrand*, Slip Opinion No. 2023-Ohio-3005, ¶ 1 (where the Supreme Court of Ohio denied immunity as a matter of law stating: "[r]easonable minds could differ regarding whether [Officer] Hilderbrand was manifestly acting outside the scope of his employment during the events leading up to [Ms.] Harris's injury."); *Anderson w. Westlake*, 9th Dist. Summit No. 19CA011512, 2021-Ohio-4582, ¶ 37 (where this Court explained: "because reasonable minds *could only conclude* that they did not act in a reckless manner, the officers are entitled to immunity and summary judgment."). (Emphasis added.) *See also MacCabee v. Mollica*, 4th Dist. Athens No. 09CA32, 2010-Ohio-4310, ¶ 18 (Where the Fourth District Court of Appeals denied immunity as a matter of law to a teacher who disciplined a child, stating: "[s]ummary judgment is appropriate only when the facts are clear and fail to rise to the level of conduct that

could be construed as malicious, in bad faith, or wanton and reckless. * * * Therefore, we find appellant's first assignment of error-that the trial court was required to determine his immunity as a matter of law-to be unavailing.").

**{¶22}** Accordingly, Appellants' sole assignment of error is sustained, in part, as to APS and the Board of Education because the trial court failed to undertake a three-tiered analysis of political subdivision immunity, and overruled, in part, as to the individual employees because they are not entitled to immunity as a matter of law.

III.

**{¶23}** The judgment of the Summit County Court of Common Pleas is affirmed, in part, and reversed, in part. The matter is remanded for further proceedings consistent with our decision.

Judgment affirmed, in part,
reversed, in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
BETTY SUTTON
FOR THE COURT


STEVENSON, J.
CONCUR.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶24}   I respectfully dissent from the majority's judgment to the extent it remands this matter to the trial court for it to consider R.C. 2744.03(A), as I would conclude that the trial court erred in deciding that there was a genuine issue of material fact with respect to whether the exception contained in R.C. 2744.02(B)(5) applies under the facts of this case.

{¶25}   R.C. 2744.02(B)(5) provides:

> In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code.  Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

"[T]he plain language of R.C. 2744.02(B)(5) requires [a] statute to 'expressly impose' civil liability upon [a] political subdivision." *Callaway v. Akron Police Dept.*, 9th Dist. Summit No. 29852, 2021-Ohio-4412, ¶ 13, quoting *Alicea v. City of Lorain*, 9th Dist., 2018-Ohio-2538, ¶ 13. "It is not sufficient that a statute imposes civil liability in general for R.C. 2744.02(B)(5) to apply

* * *." *Callaway* at ¶ 13, quoting *Bonkoski v. Lorain Cty.*, 9th Dist. Lorain Nos. 17CA011094, 17CA011120, 17CA011122, 2018-Ohio-2540, ¶ 9.

{¶26} In their complaints, Appellees alleged that Appellants violated R.C. 4112.02(G). R.C. 4112.02(G) states that "[i]t shall be an unlawful discriminatory practice * * * [f]or any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, military status, national origin, disability, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation." While it is true that the definitions of both person and employer contained in that chapter include political subdivisions, *see* R.C. 4112.01(A)(1), (2), R.C. 4112.02(G) does not use either word in describing who cannot engage in the listed discriminatory practice. Thus, I cannot say that R.C. 4112.02(G) expressly imposes civil liability upon a political subdivision.

{¶27} Appellees' argument that R.C. 4112.99(A) imposes liability on the political subdivision for the violations does not change this conclusion. R.C. 4112.99(A) states that "[w]hoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief. Except as otherwise provided in division (B) of this section, a person may bring such a civil action in a court of competent jurisdiction." However, the only alleged violations of the chapter involve R.C. 4112.02(G), and, as discussed above, R.C. 4112.02(G) does list political subdivisions as potential violators of that section. Therefore, there has been no demonstration that the exception contained in R.C. 2744.03(B)(5) is applicable, and the trial court erred in concluding otherwise.

{¶28} Given the foregoing, no analysis under R.C. 2744.03(A) is needed. *See Callaway*, 2021-Ohio-4412, at ¶ 16.

APPEARANCES:

MARKUS A. APELIS, MATTHEW A. SMARTNICK, and RICHARD C.O. REZIE, Attorneys at Law, for Appellants.

EDWARD L. GILBERT, Attorney at Law, for Appellees.